# Koch, Appellant, v. Koch.

*Divorce—Adultery—Condonation—Evidence.*

Condonation as a defense in a suit for divorce is a substantive
material fact, and is to be established by a reasonable preponderance
of credible testimony. The burden of proof is on the respondent.

On a libel for divorce by a husband against his wife on the
ground of adultery, where the offense is admitted, but condonation
is set up as a defense, the findings of a master in favor of the libel-
lant should not be set aside, where it appears that the testimony
of the libellant himself squarely contradicted the testimony of the
respondent, that the latter was a confirmed morphine eater, with
a memory affected by the use of the drug, and the master states
that he was convinced from the testimony and appearance of the
respondent that she had a morbid mind, and was not to be believed.

Argued Dec. 8, 1915. Appeal, No. 245, Oct. T., 1915,
by plaintiff, from decree of C. P. Northampton Co., Nov.
T., 1914, No. 59, dismissing libel in divorce in case of
Victor J. Koch v. Louise W. Koch. Before RICE, P. J.,
ORLADY, HEAD, HENDERSON, KEPHART and TREXLER, JJ.
Reversed.

Libel for divorce.

The case was referred to William H. Schneller, Esq.,
as master, who reported in favor of the libellant. Ex-
ceptions to his report were sustained by the court.

A full review of the testimony will be found in the
opinion of the Superior Court.

*Errors assigned* were in sustaining exceptions to the
master's report, and refusing the divorce.

*Herbert F. Laub,* of *Smith, Paff & Laub,* for appellant.
—The demeanor, frankness and candor of witnesses in
testifying is one of the supreme tests to determine the
truth between opposing contentions: Totten v. Totten,
8 North. 318.

The burden of proving her defense of condonation was on the respondent: Mendenhall v. Mendenhall, 12 Pa. Superior Ct. 290; Bealor v. Hahn, 117 Pa. 169; Howe v. Howe, 16 Pa. Superior Ct. 193; Flick v. Flick, 24 D. R. 227; Hann v. Hann, 58 N. J. Equity 211; Klopfer's App., 1 Monaghan 81.

Condonation carries with it an implied agreement that the party who forgives another does so only on the condition that the other party will not repeat the offense but will perform all marital duties that the relation imposes: Kennedy v. Kennedy, 87 Ill. 250; Gardner v. Gardner, 2 Gray (Mass.) 434; Gosser v. Gosser, 183 Pa. 499.

*Aaron Goldsmith,* for appellee, cited: Talley v. Talley, 215 Pa. 281; Schulze v. Schulze, 33 Pa. Superior Ct. 325.

OPINION BY ORLADY, P. J., April 17, 1916:

The defendant was adjudged guilty of adultery, by her own admission supplemented by overwhelming proof, and her sole defense to the plaintiff's bill for a divorce was that the offense had been condoned by her husband.

The master, after seeing the witnesses, and hearing their testimony, held that the proof she adduced was not sufficient to sustain her claim. On exceptions to his report, the learned trial judge reviewed the case with great care, and filed a lengthy opinion in which he concluded that she had established her defense, and refused the divorce for that reason. We all feel that the conclusion he reached is not warranted under the admitted facts, and the reasonable deductions to be fairly drawn from them. Condonation is a substantive, material fact, and is to be established by a reasonable preponderance of credible testimony. The question before us is—does the testimony adduced by the respondent satisfactorily prove her allegation? The burden of the proof is on her, to lead us to that conclusion.

A review of the testimony is necessary, in explanation of our judgment.

The libellant was a regular physician, actively engaged in his professional work, having his office in his home on a main street of a prosperous city. About the middle of August, 1914, on returning to his home in the late evening, he surprised his wife and S. Warren Snyder in an adulterous act. Soon thereafter he gave notice to his wife that he would apply for a divorce, when she with her paramour joined in a written admission of her guilt which was confirmed orally in her testimony before the master, with the defiant admission, "everybody does it, why can't I."

The parties had two children, one aged eight years and a babe, ten months old, and since the birth of the babe, they had occupied separate rooms, the older child with the father and the babe with the mother. After the infidelity of the wife was known this situation was unchanged. From August to October 6th, the husband remained in the house with his wife, eating at the same table but under strained relations. On the latter date he removed from the home to one he rented about a block distant, taking with him the greater part of his furniture, and both of the children. The babe was taken by him from the mother's bed, at an early hour in the morning, without her making any objection, though she knew the purpose of his going away. Since that time she has not visited her children, nor requested permission to do so.

The husband was asked a number of times whether he had had sexual intercourse with his wife, after he had known of her illicit relations with Snyder, and as often, he denied in direct and positive terms that such relation had ever been had, or solicited after the event stated above. The delay of a few months in removing from his home was explained by the libellant, because of the difficulty in securing a house at that season of the year, suitable for his professional uses. The controlling fact presented is whether the libellant had sexual relations with

his wife after her admitted infidelity. This was the issue raised by her defense. Her answer stating—"After the time of the supposed adultery, alleged to have been committed by her, he, the said Victor J. Koch, admitted her into his conjugal society or embraces." The whole of her proof was directed to that question, and not to the implied or presumed condonation by their being together in a family relation, as is urged in the opinion of the court below. She testified that on two or three occasions her husband had sexual relations with her after he had knowledge of her adulterous act.

The parties were married for eight years, and both the children were taken by the father from the custody of the mother on October 6, 1914, and have been continuously in his care without the mother ever seeing them or making any request or effort to do so. She does not mention them in her testimony except to admit that she got awake when her husband took the babe from her bed, without resistance or objection on her part.

She admitted that she had been addicted to the morphine habit for a number of years. The extent of its use and effect upon her is best shown by her own testimony: Q.—Isn't it a fact that you used to during the summer of 1914, indulge in morphine to such an extent, that you would become stupefied, and the effects would not wear off until ten or eleven o'clock the next morning? A.— Toward the morning it did, yes, Q.—And that therefore the drug acting on you that way, you are unable to tell accurately what did actually transpire, whether it was true or not? A.—Not all the time. Q.—But in a good many times the action of the drug on you during the months that you have stated that you passed under the influence of that drug, was such that you didn't know what was going on? A.—I suppose so; but I didn't take it alone. Q.—Did you use the morphine tablets? A.— Yes, sir, I did. Q.—You are an habitual user of them? A.—I was. Q.—Were you an habitual user of it as long as the doctor was living with you? A.—Not all the time.

607, (1916).]          Opinion of the Court.

The credence to be given to her testimony is correctly stated by the master, viz: "As to the condonation we have only the assertion of the respondent as against the positive denial of the libellant, who impressed the master as being a truthful, and man of respectability and cul- ture. The respondent is an admitted adulteress and drug eater. The testimony and appearance of the re- spondent convinces the master that she had a morbid mind, and is not to be believed." The master had the special advantage of seeing and hearing the witnesses which often is a determining reason for believing or doubting their statements. This measure of her credi- bility is fully warranted by text writers and legal de- cisions, as all agree that one addicted to this habit is al- ways untrustworthy. Eminent writers say—the early stages of morphinism are marked by moral degener- ation; the patient seems to lose all sense of right and wrong, and will lie most plausibly, and even thieve to obtain the drug. Any fact depending on the testimony of a witness addicted to its use should have supporting proof. The baneful effects following the use of this drug are so well recognized, that it is made a penal offense to sell it except on the prescription of a regular physician.

The testimony of the libellant is dealt with, by the master, as follows: "He is corroborated in some of the essentials of the testimony by his witnesses, and even by the respondent herself. The frank and straightfor- ward manner of testifying, not only of the libellant, but also of his disinterested witnesses, people of refinement and respectability convinces the master of the truth of their statements, and constrains him, in the determi- nation of the facts of the case, to accept their testimony wherever it comes in conflict with that of the respondent upon the material facts of the case."

In every definition given of condonation, and there are many, it is an unvarying condition, that while it is often used as a technical word, it necessarily includes the operation of the mind induced by words or acts as

forgiveness, the free, voluntary and full remission of a matrimonial offense; and offer on the one side to forgive upon specified conditions and performance of those conditions by the other: Betz v. Betz, 19 Abbt. Prac. N. Y. 90; a continuance of the connubial relation with full knowledge of all the facts giving rise to the cause of divorce: Polson v. Polson, 140 Ind. 310.

Special stress is laid by the court below on the fact that the libellant remained in the house with her about two months after she admitted her wrong doing, but under the conditions surrounding him, we feel that conduct was to his credit rather than suspicious of condonation. He gave her prompt notice that he would apply for a divorce,—as he stated, "You can go your way and I will go my way." His necessity for having his home and office in one building; the care of his small children were good reasons for his staying until he could arrange for his and their future. Her brother owned the house they lived in so that she was not left to the mercy of strangers, and he left with her sufficient furnishings for her immediate use. It is true, that the general presumption is, that a husband and wife living in the same house, live on terms of matrimonial cohabitation. This presumption may be met and overcome by proof of the facts and circumstances which destroy the probability from which the presumption springs. If it is satisfactorily established that the parties occupied separate apartments or had no access to each other, the presumption is destroyed: Graham v. Graham, 25 Atl. 358, s. c. 50 N. J. Eq. 701. The testimony clearly shows that their relation in the home was of the most formal kind, seldom speaking to each other except in regard to domestic necessities. The servant, Lottie Brewer, says—he didn't speak to her, only when it was necessary. They occupied different apartments, and each shared the bed with a child.

The master finds that the wife and her paramour had illicit relations after the middle of August; the court below agrees with this finding, and the servant's testi-

mony conclusively shows that they continued their relations. If a single instance of this be shown it of itself is an answer to her defense, unless the husband knew of the acts and condoned them as they arose: Hann v. Hann, 58 N. J. Eq. 211.

For the reasons above stated we feel that her defense failed completely, and that recommendations of the master should have been adopted.

The decree is reversed, the record remitted to the court below with directions to enter the decree prayed for in libellant's bill.