## Brown *v.* Brown, Appellant.

Argued September 30, 1948. Before RHODES, P. J., HIRT, RENO, DITHRICH, ROSS, ARNOLD and FINE, JJ.

*Edward Youngerman,* with him *Harold Blumberg* and *Yaffe & Blumberg,* for appellant.

*Mark C. McQuillen,* with him *Leon Ehrlich,* for appellee.

OPINION BY FINE, J., January 14, 1949:

Harvey E. Brown, appellee, instituted this action in divorce against his wife, Martha I. Brown, appellant, charging (1) cruel and barbarous treatment and (2) indignities to the person. The master filed his

report recommending that a divorce be granted on the ground of indignities. Appellant's exceptions thereto were dismissed by the court below and a final decree of divorce entered. The wife-respondent now appeals, contending (1) that the testimony does not establish indignities and (2) that appellee was not an "innocent and injured spouse."

The parties were married on May 30, 1928. Six children, whose ages range from nineteen to six years, were born of the marriage. At the time of the hearing the husband and wife were thirty-nine and thirty-seven years of age, respectively. During their marriage the parties lived at various addresses in Reading, Pennsylvania, or its environs. For the first year and a half the parties resided with appellant's parents, which proved to be a most unfortunate beginning, for tension and friction between the two families soon arose and provoked constant quarreling in which appellant generally sided with her parents. To eliminate this source of estrangement, appellee requested appellant to move to an apartment of their own. She at first refused, but later the parties did establish their own home. Appellant's objections in this regard, however, incited a course of conduct which ultimately caused appellee to leave his wife on August 6, 1945.

Reviewing all the evidence as we are required to do in appeals of this nature to determine whether a cause for divorce has been established, we find from the credible testimony the following facts. The appellant frequently used vile and opprobrious language and continuously accused her husband of infidelity, knowing that such charges were unfounded; she made the charges solely for the purpose of humiliating appellee in the presence of others; her abusive language was not directed toward appellee alone but also toward members of appellee's family; she called his sisters "whores," charged that appellee's mother was running a bawdy house, and accused his sisters of stealing her personal effects while

she was ill in a hospital. Furthermore, many specific instances were referred to when she physically assaulted him, made threats upon his life, and expressed a determined hatred for him. In the summer of 1945 appellant wielded a knife during a violent outburst of temper and said: "I could run this butcher knife straight through you." As a consequence of these outbursts and threats, appellee lived in constant fear for his life. On one occasion appellant struck him on the head with a garden hoe and on another threw a potted plant at him, striking him in the chest. She frequently told him to "get out of the house and stay out." She often stated in the presence of their children that she hated him. Throughout the recent war years she frequently stated to him that he was "too yellow" to enter the army and go to war. She referred to him as "yellow" and emphasized that contemptuous adjective with profanity. These remarks exhibited appellant's manifest disdain for appellee, for she knew, obviously, that appellee at the time was supporting a family of six minor children, and his availability for military service was highly questionable.

In April, 1945, while driving home from a dinner engagement, appellant began a quarrel with appellee. She severely scratched his face and at the same time grabbed the steering wheel of their car in an effort to swerve it into the path of an oncoming automobile to bring about a head-on collision. Had her intention succeeded, the probable result would have been serious injury to both parties. Finances were a constant source of arguments. Appellee was steadily employed and a hard worker. He turned over all his pay to appellant. Notwithstanding that she received all of his earnings (approximately $45.00 per week) and in addition thereto $25.00 to $30.00 per week from three of the children, she kept appellee constantly burdened with debt.

Appellant denied that she used vile and opprobrious language toward appellee and members of his family but later in her testimony tacitly admitted the use of

the vile language complained of by charging that appellee was equally abusive in the use of profane language. She admitted that she called him a "liar." She further admitted that she had on occasions physically assaulted him, but sought to justify her actions by stating that appellee provoked her. Her denials were uncorroborated and not convincing. The master and the court below found her to be unworthy of belief. After he had seen and heard the witnesses the master made the following observations with regard to appellant: "The attitude of the respondent and her manner of testifying was positive, but not too informative"; that the respondent made "emphatic denials that she did anything wrong and positive statements that she always did everything right. It is this attitude and manner of testifying . . . which makes your Master believe that . . . the libellant is telling the truth. . . ."

A master's report is, of course, advisory only; yet, as regards the credibility of witnesses whom he has seen and heard, it is to be given the fullest consideration: *Bock v. Bock,* 162 Pa. Superior Ct. 506, 508, 58 A. 2d 372; *Keller v. Keller,* 160 Pa. Superior Ct. 480, 483, 52 A. 2d 373; *Smith v. Smith,* 157 Pa. Superior Ct. 582, 43 A. 2d 371, 372. The court below succinctly observed: "The denials were not convincing to the master, nor are they to us."

"It has been repeatedly stated that 'it is impossible to lay down a general rule for the determination of what indignities render the condition of the injured party intolerable. It has been held by many courts that they may consist of vulgarity, unmerited reproach, habitual contumely, studied neglect, intentional incivility, manifest disdain, abusive language, malignant ridicule, and every other plain manifestation of settled hate and estrangement' ": *Sharp v. Sharp,* 106 Pa. Superior Ct. 33, 35, 161 A. 453. A careful reading of the entire record reveals that the court below properly concluded the appellee and his corroborating witnesses sustained the

burden of proof of showing, by clear and satisfactory evidence, a course of conduct on the part of appellant which made his life burdensome and his condition intolerable, and that appellee was an "innocent and injured spouse" within the meaning of The Divorce Law.

Decree affirmed.