Paterson *v.* Paterson, Appellant.

Argued April 11, 1955. Before Rhodes, P. J., Hirt, Ross, Gunther, Wright, Woodside, and Ervin, JJ.

*Marquis M. Smith,* for appellant.

*Harold R. Bair,* with him *Carroll Caruthers,* for appellee.

OPINION BY ROSS, J., July 21, 1955:

The husband-appellee instituted this divorce action on the ground of indignities to the person, later amending the complaint to include adultery and desertion. The wife answered denying the charges and, after lengthy hearings, the master recommended that the divorce be granted on the ground of indignities. The master dismissed, as do we initially, the charges of adultery and desertion as unsubstantiated by the evidence. The court below dismissed appellant's exceptions to the master's report and granted the divorce on the ground of indignities, and the wife has appealed to this Court.

The parties were married in Georgia in 1941 and resided in South Carolina until early 1944, when appellee was inducted into military service. Upon his separation from service in 1946 they moved to Vandergrift, Westmoreland County, where they resided until appellee left the home on August 16, 1951. He did not return to the marital domicile and at the time of the hearings was living in Marcus Hook. The parties have two children.

Apparently there was domestic harmony until appellee's return from military service, when friction developed which eventually led to the final separation in 1951. Appellee earned approximately $400 a month as salary from a steel company, and turned over all of it but $25 to appellant. He ate lunch at his place of employment but was required to take dinner at the home of his mother-in-law because appellant failed to prepare it for him. Appellant's constant absence from the home at night, ostensibly in the company of a woman friend, until the small hours of the morning, her moodiness and refusal to speak to appellee for sometimes days at a time, and the notes which she wrote setting forth her opinion of appellee, added fuel to the

fire of an already growing estrangement of the parties. The notes, which are lengthy and couched in terms of vulgarity, are reflective of a lack of respect of or consideration for her husband. They vilify him and his parents (*Brown v. Brown,* 163 Pa. Superior Ct. 490, 491, 63 A. 2d 130) and, in our opinion, manifest a settled hate and disdain of him. We can understand, without condoning, how irresponsible and forceful language may be used during the course of a heated argument, but the opprobriousness of the general tone of the notes, written deliberately at a time when "hot blood" was either not aroused or else had had time to cool, indicates to us such utter contempt for her husband as to constitute an indignity within the meaning of our Divorce Law (Act of May 2, 1929, P. L. 1237, sec. 10, as amended by the Act of March 19, 1943, P. L. 21, sec. 1, 23 PS sec. 10).

Much of the evidence relates to appellant's allegedly improper association with one Louis Nuscius. In 1949 the parties to this action and Mr. and Mrs. Nuscius became a foursome socially. When their respective spouses were not present, appellant and Nuscius continued the association on their own. No good purpose would be served by setting forth in detail all the lurid events in the record, such as their meetings in an alley and on farm land owned by Nuscius. On the latter occasion Mrs. Nuscius appeared on the scene and blows were exchanged. Appellant's explanation at the hearing as to the reason for her presence there, and the innocence of her role in the escapade is incredible, and we should appear fatuous indeed were we to accord it any consideration in this opinion. Appellee learned about the incident and the next morning, in company with appellant's brother, went in search of her. They located her in a nearby town, with Nuscius. When she and Nuscius saw them, they fled in appellant's car.

Here again appellant's explanation is far from satisfactory. Appellee subsequently enlisted the aid of their pastor to try to effect a reconciliation with his wife, but to no avail. Appellant, while maintaining she had never heard rumors concerning her association with Nuscius until the bill of particulars was filed, nevertheless admitted that she had withdrawn from the church choir, the P.T.A., and other organizations because of the unfavorable implications of the rumors.

In an action for divorce on the ground of indignities the burden is on the plaintiff to prove that defendant by a course of conduct rendered plaintiff's condition intolerable and life burdensome, and that plaintiff was the innocent and injured spouse. *Matovcik v. Matovcik*, 173 Pa. Superior Ct. 267, 98 A. 2d 238; *Soper v. Soper*, 178 Pa. Superior Ct. 182, 112 A. 2d 420. Appellant contends that appellee has failed to sustain this burden.

Appellant bases her argument of lack of a course of conduct on the fact that only three of her notes were introduced in evidence. However, the record reveals that this type trouble extended through the period from 1946 to 1951. Her association with Nuscius was likewise not of short duration. Moreover, the general vituperative character of the notes and the venom they exude lead to the conclusion that they support amply the charge of a course of conduct within the meaning of the statute.

Appellant contends that appellee is not the innocent and injured spouse because he committed acts of physical violence to her person. Appellee denied having done so but admitted that on one occasion he struck her after she had struck him during the course of an argument. Credibility of the parties was thus put in issue. While we are not bound, on appeal, by the master's appraisal of credibility, we accord it the

fullest consideration since he had the opportunity, not accorded to us, to observe the witnesses and their demeanor on the stand. *Bredbenner v. Bredbenner,* 175 Pa. Superior Ct. 580, 585, 107 A. 2d 169. We find nothing in the present record which impels us to reverse the master's finding as to credibility.

Without merit, also, is appellant's argument that appellee was guilty of desertion because he left her and did not send her money for support until he was ordered to do so by a court order—this for the reason that he was not bound to live with her, under peril of being adjudged guilty of desertion, when he had reasonable grounds for believing she was unfaithful to him. *Copeland v. Copeland,* 155 Pa. Superior Ct. 102, 106-107, 38 A. 2d 364. Prior to the separation appellee had provided for his family, and admittedly he has complied with the court order for support.

While indignities to the person as a ground for divorce cannot be defined with mathematical precision, each case depending on its own facts (*Trimbur v. Trimbur,* 171 Pa. Superior Ct. 541, 546, 91 A. 2d 307), it has been said to be ". . . an affront to the personality of another, a lack of reverence for the personality of one's spouse. . . . the offense is complete when a continued and persistent course of conduct demonstrates that the love and affection upon which the matrimonial status rests has been permanently replaced by hatred and estrangement. For then, when the foundation has collapsed the superstructure falls, and inevitably the married condition becomes intolerable and life is indeed a burden. This is the doctrine of all the cases." *Trimbur* case, supra; see also *Schaufler v. Schaufler,* 177 Pa. Superior Ct. 515, 110 A. 2d 867. That appellant's association with Nuscius will support the charge of indignities, see *Phipps v. Phipps,* 368 Pa. 291, 81 A. 2d 523; *Miller v. Miller,* 170 Pa. Superior Ct. 263,

85 A. 2d 604; *Smith v. Smith,* 157 Pa. Superior Ct. 582, 43 A. 2d 371.

From our independent examination of the record (*McGuigan v. McGuigan,* 178 Pa. Superior Ct. 176, 112 A. 2d 440; *Vergoni v. Vergoni,* 175 Pa. Superior Ct. 522, 107 A. 2d 144) we conclude that the learned court below properly found the charge of indignities to the person sustained by the evidence.

Decree affirmed.