## Graves, Appellant, *v.* Graves.

Argued March 20, 1957. Before RHODES, P. J., HIRT, GUNTHER, WRIGHT, WOODSIDE, ERVIN, and WATKINS, JJ.

*F. Raymond Heuges,* for appellant.

No appearance was made nor brief submitted for appellee.

OPINION BY WATKINS, J., June 11, 1957:

This is an appeal from the dismissal of exceptions to, and the affirmation of, a master's report in an action in divorce. Eugene H. Graves brought this action in divorce against his wife, Ernestine D. Graves, alleging a desertion, beginning August 15, 1951. They were married February 10, 1951. The husband is 23 years of age, the wife 21. They are members of the colored race. There is one child of the marriage. The master found as a fact that there had been no separation of the parties by desertion, or otherwise, beginning on August 15, 1951 and persisting for a period of two years. He recommended a dismissal of the complaint and was affirmed by the lower court.

The testimony of the plaintiff and the defendant disclosed a separation on August 15, 1951 and persisting continuously thereafter. He testified "She just said she didn't want to live with me no more." The defendant said, as to her reason for leaving him, "Because I couldn't live with him any more. I wasn't happy with him; life was getting unbearable with him and I couldn't stay with him." She said she couldn't live with him because she didn't love him.

Even the master acknowledges that since January, 1955, the parties did not live together and that this marriage is terminated insofar as living together, under any circumstances, is concerned.

The master's recommendation of the dismissal of the complaint is based upon his conviction that the plaintiff and defendant were untruthful. This conviction was based upon the fact, that, on September 22, 1955, prior to the official master's hearing, he visited the homes of both parties and during his visit to the home of the defendant's mother, the plaintiff appeared for the purpose of visiting his child. The master proceeded to interrogate the plaintiff, the defendant, the defendant's

mother and the defendant's sister. This questioning took place without any notice to counsel and without giving counsel an opportunity to be present. The master was of the white race. The parties were very young, the defendant having just become 21 years of age on August 27, 1955. None of the people so interrogated were under oath at the time and although the master indicated that he took notes, such notes are not a part of this record. At the time of his visit he was a white stranger who entered this home and stated he was the master in the divorce case and displayed a letter of appointment.

When a master's hearing was held, the master used these notes, extraneous to this record, for the purpose of cross-examination of the parties and the examination of the defendant's younger sister, who he called as a witness. He then claimed a divergence in what was said on his visit and what they testified to under oath and concluded that "The testimony is replete with contradictions."

This master was certainly enthusiastic in the performance of what he thought to be his conscientious duty as a master. So much so, that on examination of the record, we must conclude that he became an energetic counsel for this defense, instead of the impartial representative of the court.

As a further basis for his findings, the master relied on a hospital record which was admitted into evidence over the objection of plaintiff's counsel. This record included a consent card, containing a signature, alleged to be that of the plaintiff by which he was alleged to have consented to an operation on his wife at St. Joseph's hospital on August 22, 1954. It also included data alleged to have been obtained from the defendant at the time of her admission, that her place of residence, with her husband, on August 22, 1954, was at 1333 North

16th Street, Philadelphia. The defendant denied she lived at that address and that the only reason she gave that information to the hospital was to receive her husband's blue cross benefits.

The question, however, is whether such records were admissible to show that the defendant and her husband were residing together at 1333 North 16th Street, Philadelphia, on August 22, 1954, so that the desertion did not persist, or for the purpose of contradicting the plaintiff and the defendant who both denied having lived together at that address.

The hospital records should not have been admitted into evidence. The Supreme Court of Pennsylvania pointed out the limits on the admission of such records, as an exception to the hearsay rule, and indicated the probative elements that must be present as follows: (1) They must be made contemporaneously with the acts to which they relate; (2) they must have been made ante litem motam; (3) they must have been made by a person having knowledge of the facts set forth. *Paxos v. Jarka Corp.*, 314 Pa. 148, 171 A. 468 (1934).

In this case, the defendant at the time the hospital record was made, was already separated from her husband and certainly could have had a motive to distort the truth. Her statement, if admissible, could be self serving and could defeat her husband's complaint. The record also discloses that the witness called to identify the record did not make the record and had no knowledge of the facts therein set forth.

The master's report "although advisory only, is to be given the fullest consideration as regards the credibility of witnesses whom he has seen and heard, and in this respect his report should not be lightly disregarded." *Boyer v. Boyer*, 183 Pa. Superior Ct. 260, 130 A. 2nd 265. The master's advantage obtained through seeing and hearing the witnesses exists only where the findings

depended upon the credibility of the witnesses. Here, the master's findings as to the credibility of the witnesses depended on testimony extraneous to the record and hospital records that should not have been admitted.

We, therefore, remand the record to the court below for reference to a master to take additional testimony as to the facts of residence of both parties since August 15, 1951, so that a determination can be made as to the charge of desertion, without reliance on the hospital records and evidence extraneous to the record. We suggest, that under the circumstances of this case, the court might wisely refer it to a different and more impartial master.

RHODES, P. J., dissents.