Spray, Appellant, *v.* Spray.

Argued November 19, 1957. Before RHODES, P. J., HIRT, GUNTHER, WRIGHT, WOODSIDE, ERVIN, and WATKINS, JJ.

*Clarence H. Clasper*, with him *Wm. J. Graham*, for appellant.

*James A. Danahey*, with him *J. I. Simon*, for appellee.

OPINION BY WATKINS, J., January 21, 1958:

This is an appeal from an order of the Court of Common Pleas of Allegheny County denying the appellant a divorce on the ground of indignities to the person.

This action for divorce was brought by the appellant husband, George C. Spray, against the appellee wife, Miriam F. Spray, on the grounds of indignities and cruel and barbarous treatment. The charge of cruel and barbarous treatment was not pressed. The master recommended that the divorce be denied. Ex-

ceptions were filed, and after argument, dismissed and a decree entered denying the divorce.

The parties were married December 3, 1923. The appellant husband is 56 years of age, the appellee wife is the same age. There is one child born of this marriage, Ronald Fisher Spray, who is 29 years of age, married and living apart from his parents.

After a careful study of the entire record in this case we are convinced that Judge Weiss has written a well considered opinion in dismissing the exceptions to the master's report and refusing a decree in divorce, and would adopt the following portion of it: "Plaintiff, as the records disclose, bases his charge of indignities upon general allegations and a specific charge of unjust accusations of infidelity. Regarding the first, he testified, inter alia, that defendant early in their married life began to exhibit 'a studied and deliberate course of contempt, hatred and slander against all members of my family, especially against my mother, all of which caused me extreme embarrassment, humiliation, and discomfort;' that defendant objected when he engaged in any social activity and attempted dominion of them and business associations; that he was not permitted to have any alcoholic beverages in his home; that he had no control over the raising of his child; that he was accused of being not ill when he was very ill; that defendant complained to others that he was a psychopath; that defendant on several occasions complained of his alleged misconduct to his employer; and that 'during the entire period of our life Mrs. Spray has continuously and persistently exhibited a course of definite lack of affection, exhibited by oral abuse, physical abuse, malice, contempt for me and all that I have associated with and of several arrests'.

"Defendant testified that she did not alienate plaintiff from his family; that they lived congenially with

her parents without objection on plaintiff's part; that no supervision of plaintiff's social or business life occurred; that plaintiff averaged four nights a week away from home during a seven year period; that their relation except for certain brief periods was a happy one and not one of constant tirades and that she would and did deny the allegations in the bill of particulars.

"It is fundamental that divorce proceedings are not to be disposed of a doubtful balance of the evidence, i.e., testimony of one spouse denied and contradicted by the other. 'There must be a presentation of a clear and satisfactory case upon which the determination of the court may be confidently rested . . .'. Twaddell v. Twaddell, 95 Pa. Super. 429 at 432. The burden is on plaintiff to produce clear and satisfactory evidence from which an inference of settled hate and estrangement may be deducted. Here the court, concerning itself with the general charge of indignities, has concluded that plaintiff has failed to sustain this burden."

The appellant's testimony, so well analyzed by the court below, attempted to establish an unhappy marriage for the entire 29 years of its existence. The parties have not lived together since March 15, 1952. He tried to establish the unhappiness of their relationship because of minor separations, as well as lengthy separations during October, 1925, from June, 1935 to September, 1935, from November, 1950 to February, 1951 and from May, 1951 to September, 1951.

The appellee's testimony substantially contradicts each and every one of the appellant's allegations and swore that for the most part, except for the periods of separation, that their relationship was congenial, with only the usual family spats.

The most serious charge of the appellant, in his attempt to establish his case, was the continuous accusations of infidelity made by the appellee, and the

evidence clearly establishes the fact that they were made. In fact, the whole story drawn from the record, indicates that the separations between the parties and the major part of any trouble during their long married life, was a tendency on the part of the appellant to wander into the company of other women. Certainly this wife had good reason to be suspicious of her husband and was entirely justified in her accusations.

Again we draw upon Judge Weiss' opinion where he says: "When plaintiff's principal complaint is that defendant accused him of infidelity, his conduct must be subjected to close scrutiny. McGuigan v. McGuigan, 178 Pa. Super. 176. Here, the court has concluded that defendant had reasonable grounds to be suspicious of plaintiff's conduct. According to defendant's testimony, plaintiff confessed illicit relationships with other women; he pledged in a letter that there would be no more infidelity; he testified that during a separation in 1935 he visited a home of a woman at times when it was convenient for her and for him; and that he felt that he had a right to associate with women of his choice any time, any place. He told his son in response to questions concerning his visits to an apartment house in Oakland while he was living at Webster Hall Hotel, 'tell her (your mother) your father has a girlfriend, too'. He spent many nights away from home without advising his wife of his whereabouts. This, in the court's mind, is sufficient. In addition, there is competent evidence showing that he changed his residence several times so that he was near female acquaintances and showing also that he took an automobile trip to Florida with a female companion immediately after filing his divorce complaint, and upon his return spent considerable time in the apartment of another woman enjoying all the facilities which the apartment offered. Such evidence of what occurred

after separation is relevant to shed light on prior existing conditions. Van Houten v. Van Houten, 174 Pa. Super. 29; Martin v. Martin, 157 Pa. Super. 538."

The testimony of Ronald Fisher Spray, 29 year old son, an only child of the parties, as a witness for his mother, clearly destroys the attempt of the appellant to fasten the appellee with indignities based on false accusations of infidelity. He is an engineer and was graduated from Carnegie Tech in civil engineering. The master described his demeanor as a witness to be of "very high degree of intelligence and an honest desire to tell the truth". His testimony, more than all the rest of the record, consisting of 1069 pages, penetrates the conflicting testimony of his father and mother and clearly prevents the appellant from establishing his cause and proving himself to be the injured and innocent spouse.

His testimony indicates that except for the periods of separation that the relationship of his parents was a happy one and that the trouble was generated by his father's female trouble. That he had seen his father in the company of the women that the appellee complained about, in circumstances that would be, at least, compromising, and that his father had called one of them, in a conversation with him, his girl friend.

The master's report was a careful and thoughtful analysis of the testimony, witness by witness, and as he had the opportunity to observe the demeanor of the witnesses, and as credibility is an important issue in this case, we agree with the court below that there is no reason to disturb the conclusions of the master who saw and heard the evidence: *Boyer v. Boyer,* 183 Pa. Superior Ct. 260, 130 A. 2d 265 (1957); *Romano v. Romano,* 183 Pa. Superior Ct. 462, 133 A. 2d 273 (1957).

Decree affirmed.