Bello *v.* Bello, Appellant.

Argued March 27, 1962. Before RHODES, P. J., ERVIN, WRIGHT, WOODSIDE, WATKINS, MONTGOMERY, and FLOOD, JJ.

*Harry Polish,* with him *Meyer E. Cooper,* for appellant.

*Neil W. Burd,* with him *Alfred I. Ginsburg,* for appellee.

OPINION BY MONTGOMERY, J., June 12, 1962:

This is an appeal from a final decree in divorce a.v.m. granted on the grounds of desertion. The complaint in divorce charged the appellant with indignities to the person and desertion of the appellee as of March 20, 1953.

The parties, both members of the bar, were married May 10, 1947, after which they lived with the parents of the plaintiff for five years until they moved into an apartment in a building owned by them. A few months thereafter appellant was operated on at Temple University Hospital for a tumor of the brain. As a result of the operation she was paralyzed, lost the use of her right leg and right arm, and could not speak. Her condition has improved over the years but she still suffers from word aphasia and has weakness of her right arm and leg. Her doctor refused to testify as to the probability of her complete recovery.

The appellee prevailed upon the appellant's parents to take her to their home directly from the hospital in July, 1952. While she was there appellee provided her with a special hospital bed, nursing, and medical care. She remained there about five months.

Upon her parents' insistence, appellee took the appellant back to their apartment. A nurse cared for her during the day and the appellee cared for her at night.

Appellee contends that on March 20, 1953, he came home from his office and found that his wife had gone to her parents' home, taking her special bed with her, as well as her clothes. He stated that thereafter he repeatedly asked her to come back but she refused. Appellee moved to his parents' home after the separation.

The appellee testified that he supported his wife, paid for her speech, occupational, and medical therapy. He arranged rental of an apartment at the shore for her for the summer of 1954, but was not permitted in the apartment, which she occupied with her family.

During the summer of 1955 the plaintiff again rented a shore apartment for the defendant, and again was not permitted to enter. On one occasion, when she arranged for her parents not to be there, the plaintiff visited the apartment. He asked her to "come back" and she said "No, I am not coming back, I don't love you. I like it the way it is now, and I want it to stay this way."

A Municipal Court order of $40.00 per week was entered by agreement of the parties. The appellant had been given $30.00 per week by the appellee, and she started the support action when he reduced the sum to $15.00 per week, and she asked for $75.00.

Appellee testified that his wife first told him she would leave him on their wedding night; that she repeated such threat many times thereafter; that she repeatedly stated that she had married him out of sympathy because he was a cripple; and made derogatory remarks about his parents.

As a result of his wife's treatment of him, the appellee testified that he lost weight, became very nervous, required treatment by a physician for his nerves, and that his law practice was affected.

There was much testimony by the parties as to savings accounts and assets, and it appears that sometime in August, 1952, after the appellant became ill, the appellee transferred certain joint assets into his own name or in trust for his wife, parents, or brother. Subsequently, following initiation of a suit in equity by the wife, the parties settled their financial disputes.

Appellant denied that she had criticized her husband's parents or had called him a cripple and mar-

76

ried him out of sympathy. She testified that after a
family conference on or about March 20, 1953, the ap-
pellee said he could not take care of her; that her par-
ents said they would take her back and that her father
took her and her clothes to his home. She stated there-
after her husband visited her every night. When she
and her mother were at the shore appellee paid for
their apartment. After being at the shore she went
"back home" to her "mother and father's". In October,
1953, she went to stay with her sister for a period of
three months at Portchester, New York. She testified
that the plaintiff visited her about five times, took her
to New York City several times, and that he had stayed
overnight, sleeping in the same room.

After Christmas, 1953, the appellant stayed home
with her parents, and though appellee visited her, he
did not go into the house but sounded his horn and
took her with him. After she was involved in an auto-
mobile accident and was placed in a hospital, in Cam-
den, appellee came to see her and removed her to Temple
Hospital. He visited her there every day. She further
testified that her husband agreed with her suggestion
that it might do her some good to come into the office;
that commencing October 2, 1954, she came to the office
until about January, 1955. She related that she took
some bankbooks from the office.

Appellant denied that her husband ever asked her
to return and live with him.

Appellant's parents both testified that the appellee
suggested they take the appellant to their home or he
would have to send her to a convalescent home. They
thereupon packed her things and took her with them.

The master filed a report recommending a divorce
on the ground of desertion and dismissing the charge
of indignities. Exceptions to this report were dismissed
and a final decree on grounds of desertion was entered
by the lower court.

Since the testimony of the parties presents diametrically opposing accounts of their marital situation, credibility becomes the primary issue in this case. The facts surrounding the allegation of desertion were in dispute between the appellant, her witnesses, and the appellee. In view of the prior remarks made by the appellant and her conduct throughout her marriage, the master concluded that the issue of credibility should be resolved in favor of the appellee.

In a divorce action the Superior Court is required to consider all the evidence and express an independent conclusion thereon; however, where the testimony of the parties is conflicting, the master's appraisal, especially where his report presents a searching analysis and has been approved by the court below, is to be given the fullest consideration as regards the credibility of witnesses whom he has seen and heard. *Pore v. Pore,* 189 Pa. Superior Ct. 615, 151 A. 2d 650; *Giuffre v. Giuffre,* 187 Pa. Superior Ct. 154, 144 A. 2d 477; *Boyer v. Boyer,* 183 Pa. Superior Ct. 260, 130 A. 2d 265.

After a complete review of the record we are drawn to the same conclusion, and agree with the lower court that the appellant did not want to return to live with the appellee although he made numerous good faith requests that she do so, but, rather, preferred her parents and her parents' home as against her husband and the home he had provided.

The question remains whether the appellee sustained his burden of proving desertion as grounds for divorce. Desertion is an actual abandonment of matrimonial cohabitation, with an intent to desert, willfully and maliciously persisted in, without cause, for two years. *Pingor v. Pingor,* 188 Pa. Superior Ct. 447, 149 A. 2d 141; *Totino v. Totino,* 176 Pa. Superior Ct. 108, 106 A. 2d 881.

All the elements of desertion are met in the present case. The record shows that the desertion was per-

sisted in for more than two years. To establish the malice and willfulness of the appellant's leaving the marital home, the appellee has shown, from the very inception of the marriage, the constant threats of the wife to leave him, her estrangement, her contempt for him and his parents manifested in vile name calling, and her preference for the home of her parents.

Appellant's counsel cites *Jablonski v. Jablonski*, 397 Pa. 452, 155 A. 2d 614, as eliminating the requirement that the withdrawing spouse has the burden of proving consent to the withdrawal and in support of her contention that the lower court reached an erroneous conclusion by mistakenly placing the burden of proving a consensual separation upon the appellant. The Supreme Court, in the *Jablonski* case, desired to dispel any possible confusion as to the shifting of the burden of proof in divorce cases alleging desertion as a result of a footnote in *Larsen v. Larsen*, 392 Pa. 609, 141 A. 2d 353, that when a plaintiff produces oral evidence that the defendant withdrew from the marital domicile for two years, *without more*, the burden shifts to the defendant to prove consent, *as a matter of law*. (Emphasis supplied) That this was not so was the point of the opinion by Justice COHEN, who went on to explain that it is necessary for the plaintiff to show that the withdrawal was *both willful and malicious* and persisted in for the required statutory period without reasonable cause; then if the defendant produces testimony showing consent of the plaintiff to the withdrawal, this evidence may or may not overcome the plaintiff's evidence of willfulness and maliciousness, which he has the burden of proving throughout the case, in the mind of the factfinder.

As we have stated, the appellee here established, prima facie, by his testimony, the willfulness and maliciousness of the appellant's separation and his credibility was accepted by the master and the court below.

Once such evidence was offered the burden shifted to the appellant to show consent to the withdrawal which, if established, would overcome the evidence offered to prove willful and malicious separation.

This has been the rule for many years and is clearly set forth in Freedman, Law of Marriage and Divorce (2d Ed.) §255.[1]

The *Jablonski* case is in accord with this rule and it has been properly applied by the lower court in this case.

Decree affirmed.

---

[1] ". . . a *prima facie* case of desertion is established upon proof of respondent's continuous absence from the habitation for a period of two years or more, with a concurrent intent to desert. Where these elements are established, it is unnecessary for a libelant to assume the burden of affirmatively proving the absence of consent on his part to the desertion or the nonexistence of any reasonable cause. . . .

"Where the intent to desert is established, the burden, therefore, is not upon libelant to anticipate and repel the possible existence of a reasonable cause for the desertion. The burden in such case is upon respondent to establish a reasonable cause in justification of the desertion. It is therefore well settled that where respondent concedes an intentional withdrawal and absence, but seeks to justify it by the existence of a reasonable cause, the burden of proof is upon respondent to establish by a fair preponderance of the evidence the cause of divorce set up as a defense. Manifestly, this principle does not excuse a libelant from the necessity of making out his own case, even though respondent fails to establish the defense of a reasonable cause for withdrawal; the court must nevertheless examine the record to ascertain whether libelant's case is made out, and whether it reveals consent or collusion. If libelant's case reveals that respondent's absence was with his consent, his suit must necessarily be dismissed and he cannot cast upon her the burden of overcoming a case which he has not established."