John K. Musgrave, Appellant, v. Sarah Jane Musgrave.

*Divorce—Desertion—Evidence.*

In an action for divorce for desertion tried before a jury, the husband who was the libellant alleged that the respondent had wilfully deserted his house. The evidence showed that the respondent after some unkind words from her husband left his house, but subsequently returned with the intention of resuming her marital duties. Her husband did not speak to her, and when she temporarily went out of the house he closed it, and refused to permit her to enter, saying that she could go to his farm house, but that he would not stay there. Late at night she' was sent with an employee to the farm house, a mile and a half away. The next morning the respondent left the libellant's farm. Two months afterwards libellant wrote his wife the following letter : "Madam : I hereby notify and desire you to return to my house which you have wilfully and without cause deserted, and resume the performance of your duties as my wife. I offer you a comfortable house and maintenance and good treatment, and if you neglect to comply with this request, I shall be obliged to take other steps." *Held*, (1) that the letter was proper for the consideration of the jury in connection with the other evidence in the case; (2) that she was justified in leaving his house and remaining away until she received notice from him in good faith that he was willing to receive her and treat her properly; (3) that this letter could not be said, as a matter of law, to be such notice; (4) that a verdict and judgment for the respondent should be sustained.

Argued Nov. 8, 1897. Appeal, No. 173, Oct. T., 1897, by plaintiff, from judgment of C. P. No. 1, Allegheny County, June T., 1895, No. 585, on verdict for defendant. Before STER-

RETT, C. J., GREEN, WILLIAMS, McCOLLUM, DEAN and FELL, JJ. Affirmed.

Libel for divorce.

The facts appear by the opinion of the Supreme Court.

Plaintiff submitted the following point:

1. Under all the evidence the verdict must be for the plaintiff. *Answer:* Refused. [1]

Verdict and judgment for defendant. Plaintiff appealed.

*Error assigned* among others was above instruction, quoting it.

*S. Schoyer, Jr.,* with him *S. B. Schoyer* and *William Kaufman,* for appellant. — Under the frequent decisions of this court, in order to justify the wife in absenting herself from her husband's home, she must show such treatment and conduct on the part of the husband as would entitle her to a divorce, were she to apply for one on the ground of cruel and barbarous treatment. And in such a case the burden of proof is upon the wife to show such justification: Klopfer's App. 1 Monaghan, 81; Clark v. Clark, 2 Chester Co. Rep. 39; Detrick's App., 117 Pa. 452; 2 Wait's Actions and Defenses, 577 Rosenberry v. Rosenberry, 180 Pa. 221; Eshbach v. Eshbach, 23 Pa. 345; Butler v. Butler, 1 Parsons, 329; Grove's App., 37 Pa. 447; VanDyde v. VanDyke, 135 La. 459.

*J. McF. Carpenter,* for appellee.

OPINION BY MR. JUSTICE McCOLLUM, April 4, 1898:

The appellant instituted this proceeding to obtain a divorce from his wife on the ground, as he alleged, that she had wilfully and maliciously, and without reasonable cause, deserted him and persisted in such desertion for a period of more than six months prior to the commencement of his suit. The appellee denied the charge and demanded a trial by jury. The controlling question of fact presented by the issue thus made was whether there was a causeless, wilful and malicious desertion of the husband by the wife. The jury found from the evidence in the case that there was not such a desertion of him by her

as was charged in his petition, and on their verdict in her favor the judgment appealed from was entered.

The parties were married on September 9, 1891, and have not lived together since September 20, 1893. Very soon after their marriage it became apparent that their domestic relations were unpleasant, and that the husband's profane denunciations of the alleged extravagance and inefficiency of his wife in the performance of her household duties might terminate in their mutual estrangement, if not in their permanent separation. It is to his credit however, and it is frankly conceded by his wife, that he never struck her or threatened her with personal violence. Her brief visit to the World's Fair at Chicago in June, 1893, in company with her brother, and at her own expense, appears to have greatly displeased him, and this, together with some minor matters relating to supplies for the family, led him soon after her return to say to her "I will do the providing in the house; I see you don't want to work, and you have no right in my house at all, except to sit in a chair," to which she replied, "If that's all the rights I'm to have in your house I won't stay in it." In accordance with her reply to his unkind and unwarranted assertion or statement of her position, and probably influenced somewhat by his previous treatment of her, she left his house and did not return to it until September 20, 1893. Her return was not solicited or desired by her husband. He saw her in the house but he did not speak to her. The table was set for supper and he ordered his housekeeper to clear it, saying "we don't want no supper." When she went with her child from the house to the spring where the housekeeper had gone for a pail of water, her husband was in the house, and when they returned to it he was sitting on the porch and the house was closed. He refused to allow her to enter it, although her own and baby's wraps and her purse were in the bedroom where she laid them on her arrival in the afternoon. Her account of the occurrence of that night, including her removal at a late hour to his farm house a mile and a half away from his home, and her description of the accommodations provided for her there, cannot be reconciled with a purpose on his part to admit her to his dwelling or to make suitable provision for her maintenance and comfort at the place to which he sent her, or elsewhere. She distinctly testified that before she was

taken to the farm house he said to her, "the only place I have
for you now is my farm; that is your place now; you don't
get into this house any more," and when she asked him if he
would go to the farm with her he said, "I will see you get
there, but I won't stay there." He followed her to the farm
and shortly after she arrived there he returned to the house
from which he had, a few hours before, excluded her. His
conduct therefore was in accord with and corroborative of the
testimony of his wife relating to her removal to the farm. It
is obvious that his house would have been opened to receive
her if he desired or intended that she should have a home with
him. It was opened to him and his employees the same night,
and shortly after she was sent to the farm. If one of his farm
hands had closed the house and carried the key to the farm
without authority or direction from him to do so, he could and
undoubtedly would have sent MacGregor there for the key
instead of sending him there with his wife and child. That his
employees and his niece were cognizant of his purpose to ex-
clude her from his home is apparent. His niece staid at Don-
ald's house that night, and Mrs. Musgrave was refused admission
to it, solely upon the ground that its owner or lessee, who was
Musgrave's employee, did not want to offend his employer.

No good reason appears for calling in question the sincerity
and good faith of Mrs. Musgrave in returning to the home of
her husband. But it was at once apparent from his conduct
that she was not welcome there, and it is a fair inference from
the evidence that he determined to close it against her when
he could do so without forcibly expelling her from it. The
opportunity to carry out this intention was presented on the
day of her return, and he appears to have promptly availed
himself of it. Neither his own nor Blunt's explanation of the
closing of the house against her was convincing or satisfactory.

The conduct of the appellant was notice to his wife of his
determination to exclude her from his home, and it may fairly
be considered as involving his consent to her leaving him and
establishing for herself a home elsewhere. Her departure with
her child from the farm house the next morning was manifestly
prompted by a belief, founded upon his reception and treatment
of her the night before, that he desired to get rid of her, and
so prompted it was at least excusable, and cannot be justly

characterized as a wilful, malicious and causeless desertion. Having turned her away from his home when she had returned to it with the obvious purpose of resuming the position and duties of a wife therein, it devolved on him to signify to her, in good faith, his willingness to receive her in his home and to award to her there the treatment she was entitled to as his wife, before he could construe her absence as such a desertion or acquire by it a right to a divorce. Whether he signified to her, at any time after her departure from the farm house, a willingness to receive her as above stated was a question to be determined by the jury. It was fairly submitted to them and they decided it against him. If they had sustained his contention on this branch of the case their finding would have entitled him, under the instructions they received from the court, to the divorce he sought to obtain. That their finding against him on this point was warranted by the evidence admits of no doubt. He conceded in his cross-examination on the trial that he never said a word to her indicative of a desire on his part that she should return to his home, or of his willingness to receive her there if she was inclined to do so. He had many opportunities for consultation with her on this subject, but he showed no disposition to improve them. It is true that he wrote to her under date of November 16, 1893, as follows : " Madam, I hereby notify and desire you to return to my house which you have wilfully and without cause deserted, and resume the performance of your duties as my wife. I offer you a comfortable house and maintenance and good treatment, and if you neglect to comply with this request I shall be obliged to take other steps. Your husband, John K. Musgrave." He relied on this letter as constituting full performance of the duty imposed on him by his conduct on the return of his wife to his home on September 20, 1893. It will be observed that the letter was more in the nature of a command than of an invitation, that it charged her with having wilfully and without cause, deserted his home, and that it might fairly be interpreted as containing an intimation of a purpose on his part to institute proceedings for a divorce, if she neglected to comply with his request. It was however proper for the consideration of the jury in connection with the oral evidence bearing upon the question to which it related.

We think, upon due consideration of the assignments of error

that the appellant has no just cause to complain of the general charge, or of the answers to his first and third points. We therefore overrule all the assignments.

Judgment affirmed.