Barnes, Appellant, *v.* Barnes.

Argued October 16, 1934.

Before TREXLER, P. J., KELLER, CUNNINGHAM, BALDRIGE, STADTFELD and PARKER, JJ.

*William Taylor,* for appellant.

*Abraham L. Freedman,* with him *Samuel Kagle* and *Harry A. Mackey,* for appellee.

OPINION BY KELLER, J., February 1, 1935:

This is an action of divorce brought by a husband against his wife. The grounds alleged in the libel were (1) indignities to the person, (2) wilful and malicious desertion. The master, to whom the case was referred, was of opinion that the charge of indignities to the person had not been sustained, but recommended a divorce on the ground of wilful and malicious desertion. Exceptions were filed to his report by the respondent, and after full hearing and consideration the learned President Judge of the court below filed the opinion of the court sustaining the exceptions and finding that neither ground for divorce had been sufficiently established by the evidence. The libel was dismissed at the libellant's costs.

We have carefully read the testimony, as we are required to do, and our judgment of the matter agrees with the court below rather than the master.

The evidence as respects indignities to the person falls far short of the legal requirements. They were trivial, to say the least, if not 'silly' as found by the master.

On the question of desertion the evidence is conflicting. His testimony is that she left their home on August 31, 1929 without cause and never came back or offered to do so. Hers is that she left on that day

because he had told her to go the day before and that he wanted her to be out of the house by the time he returned the following day; and that he did nothing thereafter to induce her to come back to him. Her testimony is corroborated to some extent by other evidence. His stands alone. On the whole we think the evidence supports her contention rather than his.

The following facts in evidence help to persuade us to give credence to her version of the matter rather than his: (1) His unwillingness to have her occupy the same room with him at night, two days before August 31st. He gave as his reason that he was very sick, but he was well enough to leave the next day on one of his customary week-end trips to New Jersey. (2) His purchase of a lot, in the early spring of 1929, near Dorchester, N. J., a small fishing village of about 300 people, and his building upon it a 'summer home' on which he spent in the neighborhood of $20,000, all done without any notice to, or knowledge on the part of, his wife. It was his intention, he said, when the new house was completed, to move his furniture from their home in Wynnefield, Pa., to the new 'summer home,' and give up the former, as he could not afford to keep both places going. He had not consulted his wife on this point and he had made no selection of or arrangements for the apartment in Philadelphia, which he said it was his intention to rent, on giving up the house he owned at Wynnefield. Every week-end after the building was started he spent overseeing the construction, but said nothing about it to her until she learned of it by chance from a third person, when on speaking to him about it, he said that he was building it for occupancy by himself and a man who took him out gunning and would act as caretaker, and that he did not want her along; that he intended to move the furniture there and that she could get out for all he cared. (3) A day or two after she left the home

at Wynnefield he changed all the locks on the house so that she could not get in again. (4) When the 'summer home' was completed he moved all the furniture from Wynnefield to it and resided in the new house, with a man assistant, from December, 1929 to January 1, 1932, when he moved back to Philadelphia. (5) He made no effort of any kind to have her return to him.

For several years before the separation on August 31, 1929, their relations had been strained. At the time of leaving the home the respondent was ill with shingles and under the care of a physician. Since 1923 they kept no regular maid. A woman came in twice a week to help with the work, arriving between 7:30 and 8 o'clock in the morning and leaving between 4 and 4:30 o'clock in the afternoon. The rest of the work the wife did herself. The house was a large one.

If, as we think the preponderance of the evidence warrants our finding, the respondent left the home at Wynnefield because he told her to go, the libellant is not entitled to a divorce. In such case he is not such an innocent and injured party as the law contemplates. Her leaving the house in such circumstances does not amount to a wilful and malicious desertion. Bearing in mind that his direction to her to go was not a sudden flash of temper or ill feeling but the culmination of three years of strained relations between them, with every indication present of his settled intention to break up the home they were living in and go by himself to a new residence, we cannot escape the conclusion that her going was in accordance with his plans and expressed desires and was not a wilful and malicious desertion.

The appellant contended at the oral argument,—relying on the case of Sowers' Appeal, 89 Pa. 173—, that even if the libellant told his wife to leave the common home, her consequent departure and remain-

ing away would amount to a desertion unless he forcibly ejected her from the house, or compelled her to leave because of a threat to use force. He overlooks the fact that that case was an action by the wife for divorce from bed and board, and the act of assembly on which it was based (February 26, 1817, 6 Sm. L. 405) allowed such a limited divorce only in case a "husband shall maliciously either abandon his family, or *turn his wife out of doors,* or by cruel and barbarous treatment endanger her life, or offer such indignities to her person as to render her condition intolerable or life burdensome and thereby force her to withdraw from his house and family." The extract from the opinion of the court below in that case (p. 180) cannot be construed as a ruling by the Supreme Court that in an action for absolute divorce by a husband against his wife on the ground of wilful and malicious desertion, her only justification for leaving the common home is that he forcibly put her out. The direct rulings of the Supreme Court are all the other way and hold that where the husband has suggested or encouraged a separation between himself and his wife he cannot charge her with wilful and malicious desertion: Middleton v. Middleton, 187 Pa. 612, 619, 41 A. 291; Musgrave v. Musgrave, 185 Pa. 260, 262, 263, 39 A. 961. These were followed by a long line of cases in this court, among which are: King v. King, 36 Pa. Superior Ct. 33; Kurniker v. Kurniker, 54 Pa. Superior Ct. 196; Price v. Price, 83 Pa. Superior Ct. 446, 447; Fleming v. Fleming, 83 Pa. Superior Ct. 554; Lane v. Lane, 81 Pa. Superior Ct. 494. See also Braum's Est., 88 Pa. Superior Ct. 109, 112. In Arnout's Est., 283 Pa. 49, 128 A. 661, the Supreme Court said: "Where a husband consents to the wife's going, the status is one of mutual separation and she cannot be charged with wilful desertion until he in good faith has requested her return;" and in Mallory's Est., 300

Pa. 217, 150 A. 606, the Supreme Court, speaking through Chief Justice MOSCHZISKER, held that the wife was not guilty of desertion because the "separation was 'one of mutual consent' and 'this status of consentable separation' remained, because, from the day they parted until the time of the husband's death, he had never made 'a bona fide offer to his wife to resume marital relations.' "

In the present case, the husband after three years of strained relations ordered his wife to leave the home. Her going was not against his wishes, but by his direction and with his consent. He never made any bona fide offer or attempt to induce her to come back and there was, therefore, no wilful and malicious desertion on the part of the respondent.

The assignments of error are overruled and the decree is affirmed at the costs of the appellant.