## Schaufler *v.* Schaufler, Appellant.

Argued September 29, 1954. Before RHODES, P. J., HIRT, GUNTHER, WRIGHT, WOODSIDE and ERVIN, JJ. (ROSS, J., absent).

*William A. Gray,* with him *Barry H. Hepburn* and *Gray, Anderson & Schaffer,* for appellant.

*Roy Martin Boyd,* for appellee.

OPINION BY GUNTHER, J., January 14, 1955:

This is an appeal of the defendant from a decree in divorce a.v.m. entered in favor of plaintiff on the ground of indignities. Does the evidence clearly establish that such indignities were inflicted upon the plaintiff that made his life burdensome? Is the plaintiff the innocent spouse?

The parties were married on November 3, 1951, and separated on February 11, 1953. The plaintiff is a partner in an old brokerage house, and a member of well known clubs in Philadelphia. Defendant was 32 years of age at the time of the trial and plaintiff was almost 70. The master who found the jurisdictional facts ascertained that there was a contest on the merits and referred the matter to the court. Judge CRUMLISH saw the witnesses and heard the testimony consisting of 455 pages. His decision is based upon credibility of the parties and their witnesses. He disbelieved the testimony of the defendant and believed the testimony of the plaintiff and his witnesses. The trial judge passed upon the credibility of the witnesses and his judgment is worthy of the highest consideration in this Court. As Judge RENO, whose opinion we value highly, said in *Smith v. Smith,* 157 Pa. Superior Ct. 582, 584, 43 A. 2d 371: "The spontaneous gesture, the lifting of an eyebrow, the shrug of the shoulders, the intonation of the voice, the flash of the eye, the facial expression,—these are a few of the vital and influential indicia of credibility which the master observes and by which he is guided."

We have examined the evidence de novo. It is unnecessary to discuss all the evidence in detail. Plaintiff, according to his testimony, was compelled to move from their apartment at the Hotel Warwick because of indignities which he alleged occurred during the fifteen months of their married life; that she made his life burdensome by hiding important personal belongings, his front dentures, reading glasses, keys, watch and wallet. She admitted taking his watch and did not return it to him until compelled to do so by a court order. He further testified that she called him, his father and mother vile names. Many specific instances were cited which led to suspension of her rights at the Union League in Philadelphia and the Greenbrier Hotel in West Virginia.

Plaintiff called a number of witnesses, all of whom corroborated much of his testimony, particularly the vile names and contemptuous references. H. Powell Patchett, one of the plaintiff's witnesses, testified that he met the defendant in October 1951 shortly before the marriage; that soon after the marriage, she said to him: "That cheap old bastard over there doesn't give me any money." The above descriptive titles "cheap old bastard" applied to anyone are per se epithets of opprobrium. In this case they were applied to a spouse who, according to testimony, enjoyed social and business standing in this community. Are such appellations clear and strong enough to inflict indignities? An indignity may consist of various acts and, as defined by our courts, is disrespect for the personality of another. The trial judge who evaluated the evidence is an experienced jurist and his finding, in this respect, is entitled to much weight.

Another witness, James P. Junkin, Esq., testified that he was invited to meet the bride early in 1952 at the Union League; that within five minutes of the in-

troduction, defendant said to him, a total stranger to her: "What do you think of this cheap son-of-a-bitch not wanting to pay these bills?" She exhibited a lot of bills saying: "Why do you think I married this old goat?" When asked about making those remarks to Mr. Junkin, defendant said: "I couldn't say whether I did or whether I didn't." Mrs. Catherine Ourbacker, also called by plaintiff, testified that defendant said to her: "I don't think he is going to live long. I don't think he will live more than three months, and if I stick around I will get everything he has. He has no heirs." Mr. McIntyre, called as a witness, said that defendant called plaintiff a "son-of-a-bitch, a bastard, and a whore master three or four times a week in the mornings." Mr. McGuckin, house detective of the Warwick Hotel, testified that he heard her defame the name of plaintiff's parents, call him vile names, and that the telephone line to the Schaufler apartment had to be plugged because of her abuse of and vile language to the telephone operator. Mr. Layman, manager of the Union League, testified: "I told him that the conduct of Mrs. Schaufler was such that if it was not discontinued, it would very definitely cause a formal report by me to our house committee and would probably cause action by the house committee as far as membership was concerned." Mrs. Catherine B. McLean, telephone operator at the Union League, also called by plaintiff, testified that the defendant started calling a dozen times during the winter of 1952-1953 in a single night; and on one occasion called on the average of every half hour from eleven o'clock at night until six o'clock in the morning demanding to be connected with Mr. Schaufler; that the defendant was abusive and accused Mrs. McLean of being in Mr. Schaufler's room, called her a "whore, a son-of-a-bitch and a bastard." When asked by the trial judge if she

had telephoned repeatedly from eleven to six in the morning, she said "I don't remember." There was no denial.

The defense consisted, to some extent, of denials, explanations and partly of counter accusations. The explanations consisted primarily of alleging that she was intoxicated and therefore couldn't remember or wasn't responsible. The counter accusations, which form the basis for defendant's contention that plaintiff is not an innocent and injured spouse, are based mainly on the complaint that he constantly made liquor available to her and should not have done so. There is no doubt from this record that the parties led a "cocktail type" of life. There is, however, testimony that many of the indignities charged were not attributable to alcohol. A fair appraisal of defendant's testimony indicates that she, in effect, admitted many of the incidents of which her husband complained, or gave implausible explanations therefor.

We now come to the other important question for consideration. Was the plaintiff an innocent spouse? It is contended that plaintiff, having full knowledge of his wife's drinking habits, should have made every reasonable effort to save the marriage instead of making liquor accessible. _Hunter v. Hunter_ is cited by the defendant, 169 Pa. Superior Ct. 498, at page 505, 83 A. 2d 401, where the Court stated: "Under the circumstances it was for him to make every reasonable effort to save the marriage . . . He did not remove liquor from the house nor stop serving it there." The facts in the _Hunter_ case, however, were not the same. The issue there did not depend upon the credibility of witnesses but rather on facts established by the plaintiff principally. The case before us does not rest solely on appellant's acts induced by intoxication. There is evidence of many acts of indignities where liquor was

not involved. She drank before she married plaintiff. She often ordered or requested liquor when her husband was not present or after he retired. Mrs. Ourbacker said that she heard plaintiff plead with his wife not to drink.

There is no evidence that plaintiff is responsible for the indignities to which he was subjected. The court found he was an innocent spouse. We agree with the trial judge that plaintiff, aided by his witnesses, met the burden of proof by clear and convincing evidence. The determination of the lower court will not be lightly disturbed: *Ranieri v. Ranieri,* 174 Pa. Superior Ct. 618, 101 A. 2d 177. Our review of the record reveals that plaintiff and his witnesses offered more than sufficient evidence of indignities, while the defendant's case contained admissions and implausibilities. There is no reason to upset the findings of the court below.

Decree affirmed.