Burt, Appellant, *v.* Burt.

Argued November 16, 1960. Before RHODES, P. J., GUNTHER, WRIGHT, WOODSIDE, ERVIN, WATKINS, and MONTGOMERY, JJ.

*Gilbert E. Morcroft,* for appellant.

*John W. Cost,* for appellee.

OPINION BY WRIGHT, J., December 14, 1960:

On March 9, 1959, Edgar M. Burt filed a complaint in divorce a.v.m. against his wife, Lois R. Burt, on the ground of desertion. After the filing of an answer, and the determination of a rule for a bill of particulars and a petition for counsel fees, testimony was taken at two hearings before Honorable ROBERT VAN DER VOORT, one of the Judges of the Court of Common Pleas of Allegheny County. On June 3, 1960, the hearing judge entered a decree dismissing the complaint. This appeal followed.

The parties were married on October 7, 1950, in Avalon, Allegheny County, and lived together until September 6, 1956, which is asserted by appellant as the date of the wife's desertion. At the time of the hearings, appellant was aged 37 and his wife was aged 36. They have two children. Sally was born in September 1951, and David was born in September 1954. Appellant was employed by the Hartford Steam Boiler and Inspection Company, which firm had an office in Pittsburgh. However, for a period of over three years prior to September 6, 1956, appellant and his wife maintained their residence in the State of West Virginia, first at Clarksburg, later at Bridgeport. Throughout this period, the wife's mother and appellant's mother continued to reside in Avalon. Apparently appellant's sole complaint concerned the amount of time his wife spent with her mother. His employer had a company picnic each year in the summer and a com-

pany Christmas party each year in December, which events appellant always attended. Appellant and his wife and children customarily came to Avalon on the occasions of the picnics and Christmas parties. The wife and children would stay with her mother, and appellant would stay with his mother. On September 6, 1956, after a visit in Avalon, appellant returned to West Virginia without his wife and children. The pivotal issue is whether this circumstance constituted desertion on the part of the wife.

Appellant's theory is that he did not take his wife and children back with him because "she told me she couldn't give up her mother". It appears that, shortly thereafter, the husband was transferred to Pittsburgh. In November 1956, the home was sold by mutual agreement. Title was in joint names and both parties signed the deed. At about the same time, an order was entered in the Allegheny County Court for support of the wife and children. While this fact is not controlling, it is a circumstance to be given consideration: *Young v. Young,* 192 Pa. Superior Ct. 343, 162 A. 2d 45; *McNally v. McNally,* 176 Pa. Superior Ct. 494, 108 A. 2d 839; *D'Alfonso v. D'Alfonso,* 138 Pa. Superior Ct. 378, 10 A. 2d 808.

Appellant's theory rests entirely upon his own testimony. His statement that the wife "would not give up her mother" is concededly uncorroborated. "Q. Is it your word against hers? A. Yes, Sir". Each time his wife and children left the family home in West Virginia to come to her mother's home in Avalon, appellant assisted with the transportation. Sometimes he brought them the whole way, sometimes only to the airport, and on one occasion to Uniontown where they took a bus. On September 2, 1956, while on a visit to Avalon, the parties attended a movie. The wife testified that appellant struck her during an argument on

the way home. Appellant's version of this incident was that he "only attempted to hit her". On September 6, 1956, the wife had packed the clothing of herself and children, also some canned goods, and was preparing to return to West Virginia with her husband. However, appellant did not stop for her.

The wife's theory is that she was always willing to live with her husband, and that the separation was entirely appellant's idea. "I married my husband and he and the children were my first concern". Appellant insisted that his wife agree not to visit her mother without his express permission. The wife endeavored to save the marriage by arranging a number of conferences with a marriage counselor. It further appears that, following the separation, she was willing to return to her husband, but appellant never made a bona fide offer to take her back, or to establish a home in the Pittsburgh area following his transfer. The record discloses that the wife in fact attempted a reconciliation in the office of appellant's former attorney, who testified that appellant "stated that he didn't believe a reconciliation was possible, because he felt that Mrs. Burt would not eliminate the marital difficulties complained of and, therefore, if they reconciled that it would only result in another separation". The wife's theory is corroborated in a number of particulars by other testimony.

"The burden was upon appellant to establish his wife's desertion by clear and convincing evidence . . . It was incumbent upon him to prove an intention on the part of the wife to desert, wilfully and maliciously persisted in without cause for a period of two years . . . He must present a clear and satisfactory case on which our determination may be confidently rested . . . While a decree may be supported by the testimony of the complainant alone, if this testimony is contradicted and

shaken by the defendant, and there are no convincing circumstances warranting a disregard of the contradictory evidence, a case is not made out . . . In a proceeding dissolving a marriage contract, the case is not to be disposed of on a doubtful balance of the evidence": *Fitelson v. Fitelson*, 189 Pa. Superior Ct. 366, 150 A. 2d 389. A separation to which the husband consented does not support a charge of desertion by the wife: *McNally v. McNally*, supra, 176 Pa. Superior Ct. 494, 108 A. 2d 839. See also *Totino v. Totino*, 176 Pa. Superior Ct. 108, 106 A. 2d 881.

Our independent review of this record impels us to fully agree with the decision of the lower court. We quote with approval the following excerpt from the well-considered opinion of the hearing judge:

"Plaintiff bases his argument for a divorce on the grounds that his wife was duty bound to return to the marital residence in September of 1956. He argues that this failure on her part established a wilful and malicious desertion and that he was under no obligation to seek to have his wife and children rejoin him thereafter . . .

"It is obvious from the plaintiff's testimony that he encouraged the wife and his children not to return with him to West Virginia by refusing to take them with him on the long trip back home. The conclusion is obvious (as the wife claims) that he told her that he would not take them back unless she would comply with his demand that she would not see her mother unless he gave her permission to do so.

"When in September 1956, plaintiff left his family in Avalon and returned with the family car to the residence in West Virginia, such circumstances could not possibly initiate a wilful and malicious desertion by the stranded wife. Her failure to make her own way with their children back to the residence in West

Virginia within the next two months when she knew her husband was being transferred back to the Pittsburgh (Avalon) area, and while she and her husband were discussing the sale of the residence in West Virginia, could not possibly turn the consentual separation into a wilful and malicious desertion . . .

"After the sale of the West Virginia residence, plaintiff husband never established a place where the family could live together in or about the Pittsburgh area or any other area as the law requires him to do. It appears clear from the testimony of both parties that the separation of the husband from his wife and his children was with the consent of both husband and wife, and that it was a separation tolerated for the sake of convenience . . . A separation encouraged by the complaining party and consented to by both parties cannot constitute proper grounds for a divorce on the grounds of desertion".

Decree affirmed.