Walper, Appellant, *v.* Walper, Appellant.

Argued April 11, 1962. Before RHODES, P. J., ERVIN, WRIGHT, WOODSIDE, WATKINS, MONTGOMERY, and FLOOD, JJ.

*C. Francis Fisher,* with him *Edward F. Kelly,* and *Brenlove and Fisher,* for appellant.

*William D. Henning,* with him *Harry Alan Sherman,* for appellee.

OPINION BY WRIGHT, J., June 13, 1962:

We have before us for consideration decrees of the Court of Common Pleas of Allegheny County in two divorce actions. On July 30, 1947, Perry E. Walper instituted an action for divorce a.v.m. against his wife, Margaret V. Walper, on the ground of indignities. Process was served and, after requesting a bill of particulars, the wife filed an answer. The case was not proceeded with further until October 31, 1960, when the husband amended his complaint by adding a charge of desertion. After filing an answer to the amended complaint, the wife instituted a cross-action in divorce a.v.m. on December 5, 1960. The grounds alleged were desertion and indignities. The wife's complaint was subsequently amended to request a divorce from bed and board. The two actions were consolidated for the purpose of trial. After taking testimony for two full days, the hearing judge, on November 14, 1961, entered a decree dismissing the wife's complaint, and a decree granting the husband a divorce on the ground of desertion. In each case the wife has appealed.

The parties were married on September 9, 1946, in Washington, D. C., which had been the wife's hometown. After a wedding trip, they resided at the home of the husband's parents on Fordham Avenue in the City of Pittsburgh for several months. They then moved into a furnished apartment on Hornaday Road, where they continued to reside until the birth of a son on June 19, 1947. After the wife's discharge from the hospital the parties resided on Ormsby Avenue in Mt. Oliver until their separation. Their marriage was not a happy one, and the explanation appears in the following excerpt from the opinion below:

"The testimony of the parties and their witnesses differed in almost every respect, however the court is of the opinion that the crux of the parties' marital difficulties centered around their opposing beliefs regard-

ing methods of birth control. Mrs. Walper had a difficult pregnancy which included a threatened miscarriage. The parties had numerous arguments before and after the birth of their child concerning the advisability of planning their family. The record discloses that these differences between the parties were due to their respective religious faiths, the wife being of the Roman Catholic faith and the husband being Protestant".

On or about July 15, 1947, at the time of the child's baptism, the husband informed the wife that he thought it would be best if they separated, and that he wanted a divorce. His reason for this request appears in the following excerpt from his testimony: "Q. What was your reason? A. My reason was, as I had specified, Counselor, that she would not accept the use of contraceptives for birth control". As previously stated, the husband's divorce suit was commenced on July 30, 1947, at which time the parties were living together. He testified as follows: "My sole purpose in filing for a divorce at that time was to endeavor to make her see the light: this was a serious proposition, and that we were going to remain as a family unit". The law never intended that a divorce action should be used in this manner. See *Kusner v. Kusner*, 196 Pa. Superior Ct. 513, 175 A. 2d 889. Furthermore, the long delay in proceeding with the action raises doubt as to the husband's faith in the validity of his cause: *Zirot v. Zirot*, 197 Pa. Superior Ct. 124, 177 A. 2d 137. The wife is chargeable with similar delay in instituting her action.

So far as the counter-charges of indignities are concerned, we do not propose to burden this opinion with a detailed analysis of the testimony. The burden of proof was the same in each action: *Reddick v. Reddick*, 194 Pa. Superior Ct. 257, 166 A. 2d 553; *Bruno v. Bruno*, 185 Pa. Superior Ct. 219, 138 A. 2d 301. It is sufficient to say that we fail to find on the part of either the husband or the wife conduct which discloses

the necessary element of settled hate or estrangement. See *Schware v. Schware,* 192 Pa. Superior Ct. 166, 159 A. 2d 568. Seldom have we read a record, and this is a voluminous one, in which there is less evidence of bitterness. Neither party was wholly to blame, and neither party was wholly free from fault. The fact that sexual relations could not be adjusted on a satisfactory basis does not warrant the conclusion that either party was chargeable with indignities. See *Schwertz v. Schwertz,* 197 Pa. Superior Ct. 255, 177 A. 2d 139; *Bobst v. Bobst,* 160 Pa. Superior Ct. 340, 51 A. 2d 414.

Similarly, so far as the counter-charges of desertion are concerned, we do not find in the conduct of either party the necessary element of malice. See *Jablonski v. Jablonski,* 397 Pa. 452, 155 A. 2d 614. On or about August 1, 1947, following the institution of the husband's divorce action, the wife went to visit her parents in Washington, and the husband went on a fishing trip to Canada. It appears from the letters in evidence that it was originally their intention to try to adjust their differences and to continue living together. The wife testified that, after he returned from Canada, the husband first called for her to come home and, when she arranged to do so, he called a second time and told her not to come. She nevertheless returned to Pittsburgh and continued to live at the Ormsby address until sometime in February, 1948. In the meantime, the exact date is not clear, the husband removed his personal belongings and went to live with his parents.

Attempts at reconciliation failed because of the conflicting attitudes on birth control. In this connection the husband testified as follows: "Q. Now, insofar as that second condition, the one involving birth control was concerned, did you, in fact, place such a condition upon the reconciliation that you were attempting to effect? A. Yes". The wife's position appears in the

following excerpt from one of her letters: "As you remember you left me when Joseph was about one month old, and later made a condition that you would return if I would agree to live under circumstances which I am forbidden to do (even for a short time) under pain of grievous sin. You were aware of this at the time of our marriage". We are clearly of the opinion that, under the circumstances presented by this record, the wife was not guilty of desertion. The husband's offer of reconciliation was not complete, but was accompanied by a condition which was contrary to his agreement at the time of the marriage. Cf. *Peters v. Peters*, 138 Pa. Superior Ct. 534, 10 A. 2d 867. The court is required to investigate the circumstances for the purpose of ascertaining whether an offer to resume marital relations was made in good faith: *Esenwein v. Esenwein*, 141 Pa. Superior Ct. 604, 15 A. 2d 735.

Nor do we propose to interfere with the determination of the court below in the action a mensa et thoro that the husband was likewise not guilty of desertion. Under the provisions of The Divorce Law,[1] the malicious abandonment which is a ground for a divorce from bed and board is the practical equivalent of the wilful and malicious desertion for which a divorce from the bonds of matrimony may be granted. It is no less severe in its requirements and is to be applied no less strictly: *Semmens v. Semmens*, 136 Pa. Superior Ct. 377, 7 A. 2d 530. The mere fact that the husband and wife in the instant case are living separate and apart from each other does not constitute desertion: *McElroy v. McElroy*, 185 Pa. Superior Ct. 78, 138 A. 2d 299. The evidence fails to establish that the husband was guilty of a perverse withdrawal from the common domicile. Cf. *Price v. Price*, 83 Pa. Superior Ct. 446.

---

[1] Act of May 2, 1929, P. L. 1237, 23 P.S. 1 et seq.

A decree of divorce must be founded upon compelling reasons, and upon testimony that is clear and convincing: *Baxter v. Baxter,* 192 Pa. Superior Ct. 62, 159 A. 2d 533. It may not be based upon a doubtful balance of the evidence: *Fitelson v. Fitelson,* 189 Pa. Superior Ct. 366, 150 A. 2d 389. The fact that married people do not get along together is not an imperious reason for a divorce: *DeFrancesco v. DeFrancesco,* 179 Pa. Superior Ct. 106, 115 A. 2d 411. The record in the instant case indicates no more than a consensual separation based upon a difficulty arising out of conflicting religious beliefs. See *Knaus v. Knaus,* 173 Pa. Superior Ct. 111, 95 A. 2d 358. The parties were satisfied with this status for a considerable number of years, and we are not persuaded that it should now be disturbed.

The decree of the court below in No. 65 April Term, 1962 is reversed, and the husband's complaint is dismissed. The decree in No. 66 April Term, 1962 is affirmed, appellee to pay the costs.