## Bench, Appellant, *v.* Bench.

Argued September 13, 1962. Before RHODES, P. J., ERVIN, WRIGHT, WOODSIDE, WATKINS, MONTGOMERY, and FLOOD, JJ.

*William N. Kanehann, Jr.*, with him *Dower, Kanehann, Huston, McDonald & Cahn*, for appellant.

*Marshall J. Seidman*, for appellee.

OPINION BY WRIGHT, J., November 15, 1962:

On October 16, 1959, Metro Bench filed a complaint in divorce a.v.m. against his wife, Anna Bench, on the ground of desertion. A master was appointed on May 24, 1960. After taking testimony at five hearings, the master filed a report on June 12, 1961, in which he

recommended that a divorce be refused. On March 15, 1962, the court below overruled the husband's exceptions, and dismissed the complaint. The husband has appealed.

There is a voluminous record in this case. The master's report covers forty-three pages, and the opinion of the court below twenty-nine pages. Each contains a painstaking review of the testimony. The parties were married on June 2, 1934. Although the complaint alleges that the desertion occurred on March 21, 1957, on which date the wife left the home, appellant thereafter agreed to the entry of a support order, and marital relations continued until October 13, 1957. Appellant takes the position that the two-year period commenced to run on the date last mentioned. At the time of the first hearing appellant was forty-eight, and his wife was forty-seven years of age. No children were born to their union. He is an employe of the New Jersey Zinc Company, and she is a dental assistant. In the words of President Judge HEIMBACH, "the real cause of this marriage break-up was the religious differences existing between the parties. Plaintiff was a member of St. Mary's Russian Orthodox Church of Coaldale, while defendant was a member of the Ukranian Church of Palmerton, a branch of the Roman Catholic Church".

Although the appellate court is not bound by the master's appraisal of the weight and credibility of the testimony, if his conclusion is based upon a searching analysis of the evidence and has been approved by the court below, it is entitled to considerable weight: *Schwertz v. Schwertz*, 197 Pa. Superior Ct. 255, 177 A. 2d 139. Both the master and the court below decided the pivotal issue of credibility in favor of the wife. Our review of the record leads us to the same conclusion. We will therefore briefly summarize her testimony.

Following the marriage, the wife attended appellant's church. However, during the period of his military service in the second world war, she resumed attendance at her own church. After his return, disputes concerning religion commenced. They gradually became more frequent and more violent. Appellant ridiculed his wife's faith, tore up her church envelopes, and destroyed her religious articles. He told his wife's priest not to enter the home. During one of their arguments, appellant struck his wife in the chest and across the face. Following an argument in October 1956, appellant slept in a separate bedroom, and refused to eat with his wife. In January 1957, appellant stated to his wife that they could not continue to live together unless she signed a paper which he submitted.[1] The wife was willing to comply with all of her husband's demands except to leave her church. When she refused to sign the paper, appellant became profane and ordered her out of the house. Appellant continued to insist that his wife either sign the paper and live up to its terms, or leave the marital home. It should perhaps be noted that the home is owned by the parties as tenants by the entireties. The wife finally rented an apartment, to which she moved on March 21, 1957. She testified as follows: "Q. Then in March of 1957 before you left is it your testimony that your husband consented to have you leave? A. Metro and I discussed my moving. I told him I had the apartment and I said, Metro, what shall I take and he said, Anna, take anything you want. Q. Are you saying he consented? A. Yes, he consented". During the ensuing six month

---

[1] "I am the Husband of Anna Bench. These are the things I demand of my wife Anna Bench. No. 1 'Worship' one Church—No. 2 Respect your Husband—No. 3 Keep money together—No. 4 Keep arguments a Secrets—No. 5 Keep Family affairs out—No. 6 Meals on time—No. 7 Come to me for advise—No. 8 Work together not apart—No. 9 a allowance of $12.00 a week—for her spending. No. 10 lead a true christian Life".

period appellant stated several times that he wanted his wife to return to the home, but that she would have to give up her church. In this connection appellant testified as follows: "Q. Well, then you would not take your wife back unless upon the condition that she changes her faith or accompanies you to church? A. That's right. Q. So, in other words, you requested your wife to return under the condition that she join your faith? A. Yes. Q. You would not take her back unless she lived to that condition? A. That's true".

This appeal does not involve any new or unusual legal questions. As already indicated, it is the wife's theory that appellant consented to her withdrawal. In *Jablonski v. Jablonski*, 397 Pa. 452, 155 A. 2d 614, Mr. Justice COHEN made the following pertinent statement: "It is necessary for the plaintiff, in order to establish desertion, to show that the withdrawal from the domicile was both wilful and malicious and was persisted in for the required statutory period without reasonable cause; then if defendant produces testimony showing consent of the plaintiff to the withdrawal, this evidence may or may not overcome the plaintiff's evidence of wilfulness and maliciousness in the mind of the fact-finder". Appellant relies upon *Hughes v. Hughes*, 196 Pa. Superior Ct. 144, 173 A. 2d 700, in which, citing the *Jablonski* case, we affirmed the grant of a divorce. However, there was no contention in the *Hughes* case that the husband consented to the separation.

A withdrawal from the home does not become wilful and malicious desertion on the part of a wife where the husband consents to or encourages the separation: *Irwin v. Irwin*, 131 Pa. Superior Ct. 321, 200 A. 220; *Klaus v. Klaus*, 147 Pa. Superior Ct. 189, 24 A. 2d 33; *McNally v. McNally*, 176 Pa. Superior Ct. 494, 108 A. 2d 839. Where a husband orders his wife out of the house, he cannot charge her with desertion: *Cowher v. Cowher*, 172 Pa. Superior Ct. 98, 91 A. 2d 304. "Bear-

410

ing in mind that his direction to her to go was not a sudden flash of temper or ill feeling, but the culmination of three years of strained relations between them . . . we cannot escape the conclusion that her going was in accordance with his plans and expressed desires and was not a wilful and malicious desertion": *Barnes v. Barnes,* 116 Pa. Superior Ct. 92, 176 A. 523. It is not without significance that sexual relations continued for six months after the separation. Furthermore, although entry of the support order is not controlling, it is a circumstance to be given consideration: *Burt v. Burt,* 194 Pa. Superior Ct. 34, 166 A. 2d 85; *Copeland v. Copeland,* 155 Pa. Superior Ct. 102, 38 A. 2d 364. So far as the wife's failure to return is concerned, the husband's offer of reconciliation was not unconditional, but was coupled with an unreasonable condition. See *Walper v. Walper,* 198 Pa. Superior Ct. 409, 182 A. 2d 209; *Clark v. Clark,* 172 Pa. Superior Ct. 5, 92 A. 2d 236.

In our view of the case it becomes unnecessary to discuss the wife's additional contention that she had cause to leave. We are clearly of the opinion that the wife's original withdrawal was consensual, and that her refusal to return to the home was justified under the circumstances. The credible evidence demonstrates that appellant is not entitled to a divorce on the ground of desertion.

Decree affirmed.