Mullen, Appellant, v. Mullen.

Argued September 14, 1965. Before ERVIN, P. J., WRIGHT, WATKINS, MONTGOMERY, JACOBS, and HOFFMAN, JJ. (FLOOD, J., absent).

*Robert Trucksess,* for appellant.

*Alexander Knight,* for appellee.

OPINION BY WRIGHT, J., November 10, 1965:

On July 7, 1964, Joseph Mullen filed a complaint in divorce a.v.m. against his wife, Jessie M. C. Mullen, on the ground of desertion. Following the filing of an answer, a master was appointed on December 4, 1964. After taking testimony, the master filed a report on March 19, 1965, recommending that the prayer of the complaint be denied. On June 16, 1965, the court be-

low dismissed exceptions filed by the husband, adopted the master's recommendation, and refused to grant the divorce. This appeal followed. The factual situation appears in the following excerpt from the opinion of Judge SMILLIE for the court en banc:

"The parties were married March 5, 1924 and lived together until December 26, 1960,—the date alleged by husband-plaintiff as the date of his wife's desertion. At the time of the hearing, plaintiff was sixty-three years of age; his wife sixty-four; with only one child, a son aged forty. The plaintiff is employed by his son, part-time, in the contracting business; the defendant-wife is a part-time baby sitter.

"In December 1956, the parties occupied separate bedrooms. Prior thereto there had been no serious marital difficulties except arguments over sex. The plaintiff demanded sexual relations three times a week throughout most of their marriage which his wife on occasion refused. The defendant denied she ever refused to have sexual relations for any period of time and stated that as far as she could recall, there was never a week that they did not engage in intercourse during her entire married life of forty-one years duration.

"Although the testimony is somewhat conflicting as to what caused the occupation of separate bedrooms, it seems crystal clear to the writer that the wife's version is more to be believed than husband's because of the circumstances surrounding husband's conduct as is more fully hereinafter reviewed.

"The plaintiff stated that the change of bedrooms was caused by wife's persistent refusal to have sexual relations. The wife-defendant testified that during the last six months of 1956 her husband's attitude towards her underwent a drastic change. The change coincided with finding lipstick on his shirt collar; women's earrings in his car; sudden long trips to Florida and

California without his wife; a Bristol motel key in his pocket for which no satisfactory explanation was offered; and, culminating in learning that an Ann Johnson had entered the life of husband-plaintiff. Husband then moved out of the bedroom and when the defendant asked him to return he told her to go away or he would 'punch her in the face'. On another occasion he threatened to 'bash her head in'. Husband did not talk to her for long periods of time; he asked her to get out of the house on several occasions; finally said that he was tired of looking at her and wished that she would get out. During that particular three year period, husband reduced her weekly allowance from $32.00, to $28.00, then to $24.00, and finally to $20.00. He stopped the delivery of the coal that was needed to keep the home warm. On the rare occasions after 1960 that husband spoke to her, husband-plaintiff referred to a newspaper account of a prowler who had been caught by the police and said if he could get hold of the prowler he could get rid of his wife for 'less than $10,000.00 and he wouldn't have to bury (her) me'.

"In the last six months of 1960 when he spoke to plaintiff he used the crudest of language and cursed her which he had not done in the other thirty odd years of their married life.

"On December 26, 1960, the parties had a gathering at their home with defendant's relatives. The plaintiff-husband himself said he told the defendant's brother, 'You ought to take this Goddamn son-of-a-bitch with you'. The wife-defendant, on the other hand, testified that the plaintiff said, 'Take this Goddamn son-of-a-bitch with you. I'm tired of this bastard being in my hair. She's going out of here either lying down or standing up'. The defendant further testified she was frightened and the plaintiff's appearance was 'wild'. The defendant then packed her things and left the house. The defendant testified before the incident she

had not planned to leave nor was she waiting for a convenient reason to leave.

"The plaintiff admitted before the separation he offered the defendant $10,000.00 if she would leave the house. It is interesting to note that the $10,000.00 agrees with the sum he is alleged to have said would enable him to have his wife killed by a prowler. Later he offered the defendant the marital home if she would get a divorce".

The applicable legal principles are well settled, and need not be restated at length. In a divorce action of this nature, the burden is upon the husband to establish his wife's desertion by clear and convincing evidence: *Jablonski v. Jablonski*, 188 Pa. Superior Ct. 337, 146 A. 2d 813; affirmed 397 Pa. 452, 155 A. 2d 614. The wife's withdrawal from the domicile must have been both wilful and malicious: *Young v. Young*, 192 Pa. Superior Ct. 343, 162 A. 2d 45. While a decree may be supported by the testimony of the husband alone, if this testimony is contradicted and shaken by the wife, and there are no convincing circumstances warranting a disregard of the contradictory evidence, a case is not made out: *Burt v. Burt*, 194 Pa. Superior Ct. 34, 166 A. 2d 85.

The evidence in this record consists entirely of the testimony of the parties themselves. An appraisal of their respective credibility is therefore of great significance. The master and the court below determined this pivotal issue in favor of the wife, and our independent review of the testimony leads us to the same conclusion.

Following the alleged desertion, the wife was awarded support by the court of quarter sessions in the amount of $70.00 per week. On appeal to this court at No. 192 October Term 1961, the record in the support proceeding was remanded for the purpose of taking additional testimony. As a result of that rehear-

ing, the order was reduced to $45.00 per week. There was no further appeal.[1] Although entry of the support order is not controlling, it is a relevant and material fact to be given consideration: *Copeland v. Copeland*, 155 Pa. Superior Ct. 102, 38 A. 2d 364.

A considerable portion of appellant's brief is devoted to the argument that he was not guilty of indignities to the person so as to justify his wife's departure. This was not the wife's theory of the case. Her defense was, as stated by the court below, "that the separation of the parties was not only consented to by the plaintiff but actively instigated by him". A withdrawal from the home does not become wilful and malicious desertion on the part of the wife where the husband consents to or encourages the separation: *Bench v. Bench*, 199 Pa. Superior Ct. 405, 185 A. 2d 664.

Appellant also argues that, within the statutory period of two years, he requested his wife to return and she refused to do so. It is of course true that, even though the initial separation is with the husband's consent, his bona fide request for her to return, ignored by the wife, will change the character of the separation into that of a malicious desertion: *Klaus v. Klaus*, 147 Pa. Superior Ct. 189, 24 A. 2d 33. However, the offer of reconciliation must be made in sincerity and good faith: *Hyder v. Hyder*, 149 Pa. Superior Ct. 526, 27 A. 2d 521. The court is required to investigate the circumstances for the purpose of ascertaining whether an offer to resume marital relations was made in good faith: *Walper v. Walper*, 198 Pa. Superior Ct. 409, 182 A. 2d 209. In this connection, the opinion of the court below contains the following pertinent statement:

"Plaintiff said that he asked his wife to return on several occasions after the separation. The alleged re-

---

[1] The order was later reduced to $40.00 per week, which amount the husband is still paying.

quests were not bona fide or sincere efforts to reconcile as is revealed clearly by the circumstances and the form of so-called efforts to have his wife return. Each request was made either (1) in the Court Room during the course of support proceedings; or (2) by letter through his attorney. An overture in that manner or place does not indicate a sincere attempt to effect a reconciliation. It smacks of the law office. It does not emanate from the heart or the reasoned mind of a spouse desirous of honestly resuming marital relations even on a trial basis. It was dramatically staged for the maximum legal results. Although the parties lived a short distance from one another for several years following their separation, the plaintiff never sought his wife's return".

In summary, we agree with the court below that the wife's original withdrawal was consented to by the husband, and that his offers of reconciliation were not made in good faith. Appellant failed to establish by credible evidence that he is entitled to a divorce on the ground of desertion.

Decree affirmed.