## Walters v. Walters

*Frederick V. Andrews,* for plaintiff.
*Phillip B. Freedman,* for defendant.

DOWLING, *J.,* March 29, 1978—Once more we are presented with a master's report, deficient in its findings, erroneous in its conclusions, and obscure in its placing of credibility.

We have, it appears, adopted, perhaps subconsciously, a policy in approaching divorce cases that it really doesn't matter where there is no opposition

whether the statutory requirements are fully complied with. If husband and wife wish to dissolve the bonds which no man is supposed to put asunder, why be overzealous about the grounds? Philosophically, this attitude *may* have some justification in a run-of-the-mill situation and possibly has seeped into contested cases. But if the matter be resisted, surely plaintiff should be put to his burden of convincing the court that when he said "for better or for worse" he really wasn't thinking of the present morass of "indignities" and, moreover, is truly an innocent as well as an injured spouse.

So to the matter in hand. John wishes to divorce Shirley and the master has recomm8ended that his prayer of "indignities" be granted. Shirley desires that the legal status of her relationship with John continue and has filed exceptions which raise four issues.

Initially, error is charged in the master's basing certain findings of fact upon allegations that were not included in the bill of particulars. An old but still viable decision speaks to this:

"A bill of particulars is an amplification or more particular specification of the matter set forth in the pleading. While it need not state more than the party furnishing it is bound to prove under the pleading, it must be as specific as the circumstances of the case will allow, and should fairly apprise the opposite party and the court of the nature of the claim or defense made and the nature of the evidence." Weedon v. Weedon, 34 Pa. Superior Ct. 358 (1907).

The bill of particulars limits the evidence which a party may introduce inasmuch as such evidence must conform to the averments of the bill: Cantwell v. Cantwell, 179 Pa. Superior Ct. 452, 115 A. 2d 801

(1955). A plaintiff who fails to set forth a particular occurrence should not be permitted to prove the occurrence at the hearing: Draves v. Draves, 160 Pa. Superior Ct. 35, 49 A. 2d 840 (1947).

The master made findings of fact that: The husband was sleeping separately from the wife; the husband's social activities were curtailed because of defendant's unwillingness to accompany him to functions; defendant confided in her father more than in plaintiff; defendant's church membership was transferred without his knowledge or consent; police officers were called in December 1976, and again when plaintiff left the house and came back to get his belongings; the wife told plaintiff he was not the father of their child; plaintiff was constantly reminded that it was defendant's mother who had bought them their bedroom furniture; and defendant reminded plaintiff of chores that needed to be done. None of these findings of fact is related in any way to the bill of particulars filed by plaintiff in response to defendant's praecipe. A timely objection was made by defendant to testimony relating to these purported acts.

It is also charged correctly that the master made no finding of fact with regard to the emotional state of defendant during the period of the purported acts of indignities. The wife testified that she was hospitalized in March of 1976 and that she was under the treatment of a psychiatrist. The master made no findings with regard to the effect that defendant's mental condition might have had on the purported acts of indignities. In Barr v. Barr, 232 Pa. Superior Ct. 9, 13, 331 A. 2d 774 (1974), it was noted that:

"It is settled law in Pennsylvania that conduct, no matter how severe, arising from mental ill-

health is unintentional and therefore lacks the spirit of hate, estrangement and malevolence that is the heart of the charge of indignities. [citations omitted.] The court below recognized this principle but found it inapplicable because, in the court's view, 'nothing in this record would justify this Court in setting aside the action of the Master on the grounds that the conduct complained of was caused by [the wife's] mental condition.'

"We cannot share this view of the record. Our conclusion might be different if the master had discussed the evidence of the wife's mental illness and had found, for reasons explained in her report, that the wife's illness was not the source of her objectionable conduct. The difficulty is that the master never discussed the evidence of the wife's mental condition at all. If one were to confine oneself to the master's report, one would never suspect there has been such evidence."

It is also alleged that it was error for the master to prohibit as he did defendant's counsel from cross-examining plaintiff on actions of possible infidelity, contemporaneous with the purported indignities which plaintiff relied upon. Jack left Shirley in April of 1976 and, on direct examination, testified to alleged indignities occurring over a period of time, some of which acts were after the separation of the parties. For example, Mr. Walters testified:

"Following my leaving the house over a year ago, she approached my employer over the telephone one weekend, saying that I had been making statements around the house with which she could accuse him and me of libel or mismanagement and threatened to write a letter or call the owners of the company, who were out of town, and inform them

of improprieties happening in my office. It was a totally irrational act and I felt it was done to see if she could have me fired. Why she wanted to do that, I don't know because she was benefitting from the income as well as I was. It was another way of hurting."

The master relied upon his testimony because in his findings of fact he concluded that defendant called plaintiff's employer and "almost got him fired." Counsel attempted to cross-examine plaintiff as to his behavior with other women during the period immediately before and after the separation. Objection to this line of examination was sustained. Plaintiff argues that acts committed after the establishing of indignities will not defeat a right to a divorce: Glass v. Glass, 164 Pa. Superior Ct. 118, 63 A. 2d 696 (1949). However, the principle that adultery (or any other conduct that would deny plaintiff the status of the innocent and injured spouse) committed after the right to a divorce for indignities has accrued is not a cause for refusing the divorce "has application only where the alleged immoral acts are not connected in any way with the grounds for divorce in the complaint": Orsuto v. Orsuto, 171 Pa. Superior Ct. 532, 538, 91 A. 2d 284 (1952).

This was error because the husband attempted to establish his case by referring to acts occurring after the separation and the wife should have been permitted to show that, during this period, plaintiff was not the innocent and injured spouse. The master, in discussing this matter, concluded that the acts that the husband would have admitted on cross-examination would not have established adultery. There are two fallacies in this: one logical and one legal. As to the formerefendant was prohi-

bited from probing the matter, it cannot be known what the husband would have admitted under cross-examination. And as to the latter, the requirement to plaintiff in a divorce action to qualify as an innocent and injured spouse means that the husband may be denied relief even though his conduct falls short of grounds for divorce: Murphy v. Murphy, 204 Pa. Superior Ct. 576, 205 A. 2d 647 (1964). It is not necessary to prove adultery.

It should also be pointed out that even though the grounds for divorce on indignities had accrued by the time of the separation, subsequent acts of plaintiff may be considered where they are close and immediate in time so that they raise inferences of infidelity prior to the separation: Orsuto, supra. Here, we are dealing with the period of time immediately after the husband left the wife and where the record shows unexplained absences, the receipt of mysterious phone calls, and other instances prior to separation which could rise to an inference of behavior which would disqualify plaintiff as an innocent and injured spouse.

Finally, we agree with defendant that plaintiff has not sustained his burden which is to establish his case by clear and satisfactory proof with the evidence preponderating in his favor: D'Alessandro v. D'Alessandro, 187 Pa. Superior Ct. 194, 144 A. 2d 445 (1958). Indeed, a reading of the master's report gives one the uneasy feeling that he was shifting the burden onto the wife of disproving her husband's charges. As, for example, where he states "It is the opinion of the master that the defendant did not sufficiently rebut most of plaintiff's contentions. Some, of course, were successfully rebutted. Their denials are not, in the opinion of the master, successful rebuttal."

"Indignities," to justify a divorce, must consist of a course of conduct on the part of defendant which renders the condition of a plaintiff intolerable and life burdensome. There must be evidence from which an inference of settled hate and estrangement may be deduced: Cutter v. Cutter, 165 Pa. Superior Ct. 103, 68 A. 2d 192 (1949). "Indignities" may consist of various acts which evidence disrespect for the personality of another: Schaufler v. Schaufler, 177 Pa. Superior Ct. 515, 110 A. 2d 867 (1955); including vulgarity, unmerited reproach, habitual contumely, studied neglect, intentional instability, manifest disdain, abusive language, malignant ridicule and every other plain manifestation of settled hate and estrangement: McKrell v. McKrell, 352 Pa. 173, 42 A. 2d 609 (1945); but not slight or irregular acts of misconduct: Hahn v. Hahn, 135 Pa. Superior Ct. 39, 42 A. 2d 821 (1939). A single act or an occasional isolated incident does not entitle a spouse to a divorce on the grounds of indignities as the law requires a course of conduct or continued treatment as renders the spouse's condition intolerable and life burdensome.

In the present case, not only does the transcript not clearly establish that the husband is entitled to a divorce based on indignities but, on the contrary, illustrates that John had a violent temper, was inclined to the use of abusive force on Shirley, drank, and was guilty of behavior that would disqualify him as innocent and injured. What is extraordinary about that master's recommendation is that it includes findings of fact that, at least in part, establish that the husband was not innocent and injured. The master finds that the husband was violent and the evidence to this effect was uncontroverted. The master found that during the time the parties were

living together, plaintiff told defendant that he had received a call from a woman, that the call was returned, that he and the woman had a lot in common, that he liked the woman's children and they liked him, and that he felt as though God was giving him a second chance to raise some children better than he had reared his. The master concluded that this did not establish adultery. The master found that plaintiff lied to defendant about his whereabouts in December, 1976.

Assuming the husband was innocent, there is nothing in the record to establish his charge of indignities. First, it is not clear exactly what the master has found. The master indicates that plaintiff did not satisfactorily establish particular no. 5, having to do with the wife living within the financial ability of the husband, and then turns around and bases his recommendation on a finding of fact that plaintiff had difficulty with defendant living within their financial ability. (Finding of fact no. 32.) In his recommendation, the master also concluded that some of the charges included in the bill were "rebutted" while some were not. The master gives no indication, however, which charges were rebutted and which were not. He comes to no conclusion as to whose credibility was to be believed and whose was not although there were numerous questions of fact in controversy. See Mintz v. Mintz, 99 Dauph. 350 (1977).

The remaining "findings of fact" do not establish indignities. The master concludes that decisions were made by defendant and her parents rather than by the husband. Is this an indignity? Hardly so when additionally husband-plaintiff has complained that he was called in to act as a "referee" as to the relationship between the wife and their

daughter. The husband seems to be complaining on the one hand that he was not called in often enough and on the other hand that he was called in too often. The master has also concluded that his recommendation is supported by the husband having his church membership transferred without his knowledge or consent even though there is nothing in the record to show that the wife did this. The master relies on the finding that police officers were called in December of 1976 and again when plaintiff left the house, although the evidence in the record was uncontroverted that plaintiff, on at least one of these occasions, threatened defendant. The master further relies upon findings that defendant reminded plaintiff of chores that needed to be done; that the parties were unable to live as husband and wife (although there is nothing in the record to indicate that if this be true, it was the fault of the wife); that defendant would become angry or would not communicate; that defendant confided in her father more than in plaintiff; that the wife imposed unreasonable house rules, such that plaintiff feared he could not take a shower because of wetting the curtains; and that defendant and plaintiff had no social life.

Lack of affection: Wile v. Wile, 48 Pa. Superior Ct. 494, 496 (1912); Blose v. Blose, 163 Pa. Superior Ct. 322, 327, 61 A. 2d 370 (1948); petty or occasional quarrels: Boyles v. Boyles, 179 Pa. Superior Ct. 184, 189, 116 A. 2d 248 (1955); and, unhappiness: Coon v. Coon, 173 Pa. Superior Ct. 60, 66, 95 A. 2d 344 (1953), do not qualify as indignities. The fact that sexual relations may not be adjusted on a satisfactory basis also does not support a claim of indignities: Walper v. Walper, 198 Pa. Superior Ct. 409, 413, 182 A. 2d 209 (1962).

So this marriage must continue into its 27th year until "that old common arbitrator, Time, will one day end it."[1]

Accordingly, we enter the following

### ORDER

And now, March 29, 1978, the master's report is disapproved and plaintiff's complaint in divorce is dismissed.

---

1. W. Shakespeare, *Troilus and Cressida*, IV, 5.